CHARLES E. KEARNEY et al., Defendants in Error, v. SAMUEL D. VAUGHAN et al., Plaintiffs in Error.

1. *Contracts — Specialty — Attorney in fact — Execution — Equity.*— An agreement under seal by an attorney for a principal, although inoperative at law for want of a formal execution in the name of his principal, is binding in equity if the attorney had authority.

2. *Chancery, court of — Sale of estate of minors not a nullity.*— Chancery proceedings to sell the estate of minors, although instituted prior to the act of 1861 (Sess. Acts 1860–1, p. 98), were not void in the sense of being a nullity, even if the court went beyond its powers. Chancery courts have always had jurisdiction over the estates of minors. And if they exceed their powers under the law, such excess is not a naked assumption of power, as might be the case if the tribunal had no jurisdiction. Their action in such cases not being a nullity, but, if void, only relatively so, strangers cannot disregard it.

3. *Equity — Purchasers, innocent.*— A purchaser of land who buys of one who, as he supposes, has the legal title, but who informs him that even if it be so, he does not own the property and makes no claim to it, and for a nominal consideration obtains from him a quit-claim deed, cannot be called an innocent purchaser, and cannot be protected either in equity or under the registration act.

*Error to Kansas City Court of Common Pleas.*

*W. Hough*, for plaintiffs in error.

I. A court of equity has no inherent power to sell infants' real estate. (Field v. Moore, 19 Beav. 176 ; Calvert v. Godfrey, 6 Beav: 97 ; Forman v. Marsh, 1 Kernan, 551 ; Wood v. Mather, 38 Barb. 484 ; Vowles' Heirs v. Buckman, 6 Dana, 466 ; Williamson v. Berry, 8 How. 556.)

*J. E. Merryman* and *Karnes & Ess*, for defendants in error.

"The court of chancery had inherent jurisdiction, independently of the statute, to order the sale of the equitable interests of infant plaintiffs." (Inwood v. Twyne, 2 Eden's Ch. 153 ; Wood v. Mather, 38 Barb. 482.)

Whenever an encumbered estate devolves on an infant and a sale is demandable by a third person, the court of chancery may order its sale on petition of the infant. (Adams' Eq. 642–4 ; Snover *et al.* v. Snover, 2 Green, N. J., 85 ; *Ex parte* Salisbury, 3 Johns. Ch. 347 ; Hedges *et ux.* v. Riker *et al.*, 5 Johns. Ch. 163 *et seq. ;* Field v. Schieffelin, 7 Johns. Ch. 154 ; Monday v. Monday, 1 Ves. & B. 223 ; Williams v. Harrington, 11 Ired. 620–1 ; Ashburton v. Ashburton, 6 Ves. Ch. 6.)

II. The acts of these infants in procuring the order to sell are at farthest only voidable, not void. (2 Kent, 252, 253, note ; Gates v. Kennedy, 3 B. Monr. 167; Moore's Heirs v. Moore, 12 B. Monr. 651 ; Valle's Heirs v. Fleming, 29 Mo. 163–4 ; Ferguson *et al.* v. Bell's Adm'r, 17 Mo. 351.)

BLISS, Judge, delivered the opinion of the court.

The plaintiffs claim lot 243 in Old Town, now Kansas City, and show that in 1847 the "Old Town Company," consisting of John C. McCoy and others, were the proprietors of this and other lots ; that they appointed Pierre M. Chouteau their attorney in fact to sell and convey said lots ; that Ezekiel Huffman purchased this lot, and that said Chouteau undertook to convey him the same, but by a deed defective in this : that it recites that the

indenture was made and entered into by and between the said Chouteau as attorney in fact of the owners (naming them) of the first part, and said Huffman of the second part, and was signed and acknowledged by said Chouteau, who, however, attests that he executed it "as attorney in fact as aforesaid." The plaintiffs claim through this deed, and that, although it did not technically convey the legal title of the proprietors, yet, as they received the consideration, and the instrument was intended as a conveyance — the said attorney in fact being regularly authorized to sell and convey — equity will correct the error and execute the power; and this is the principal object of the proceeding. Of this there is no question, unless a subsequent equity intervenes. "An agreement under seal by an attorney for a principal, inoperative at law for want of a formal execution in the name of the principal, is binding in equity if the attorney had authority." (1 Am. Lead. Cas. 608, and cases cited.) We must consider that the consideration was paid for it, was so recited in the instrument, and the contrary was not shown; and also that Chouteau was empowered to sell and convey, for so the power of attorney reads, notwithstanding he testifies that the owners usually sold and he conveyed.

The chief controversy upon the trial arose, first, upon the right of the plaintiffs to the property as claiming under Huffman; and, second, upon the equities of defendants as innocent purchasers.

1. The evidence shows that Huffman, in 1848, conveyed to Burnett Scott, who took possession and made some improvements upon the lot. He went to California in 1849 and died. A record of a partition suit among the heirs of Scott was read and objected to by defendants for alleged irregularity, by which this lot was assigned to the widow as dower; but it cuts no figure, as plaintiffs' title is derived from the heirs by a subsequent proceeding. This proceeding was a petition in 1859 for a sale of the property filed in the Court of Common Pleas by the widow and her then husband, Thomas Miller, and the guardians of the Scott heirs. This decree for sale was made before the passage of the act of 1861 (Sess. Acts 1860–1, p. 98), the substance of which was embodied in the General Statutes, authorizing Circuit Courts to order the

sale of the real estate of minors, and the proceeding could not have been founded on that statute. Under some circumstances, however, it has been held that a court of equity will order the sale of the real estate of minors, though it is not supposed that the general power exists independently of statute. If this were a proceeding by the heirs to recover their property notwithstanding the sale, it would be necessary to scrutinize it, to examine the authority of the court to order it, and to see whether it could be sustained. But the defendants have no interest in that question; the heirs are not contesting, they are not made parties, and may be satisfied with the sale and be willing to abide by it. They are not concluded by the plaintiffs' judgment, and so far as this case is concerned we are at liberty to treat the sale as having passed title to the plaintiffs.

Counsel cite authorities to show that chancery proceedings to sell the real estate of minors are void, and that such minors, when arriving of age, may repudiate them and recover the property sold, and insist that if void they are a nullity, and cannot be treated as valid for any purpose.

It is, perhaps, unfortunate that we are not supplied with a term of more precision than the word "void," a word more often used to point out what may be avoided by those interested in doing so than to indicate an absolute nullity — a proceeding or act to be disregarded on all occasions. Of the latter class we might instance a common-law judgment rendered by a town council or County Court, or a conveyance by a stranger to the title while the real owner is in possession under a record title. But many things are called void which are not *absolutely* so, and, as to mankind generally, are treated as valid. They can only be called *relatively void*. For instance, conveyances, assignments, etc., in fraud of creditors, are declared by the statute to be void as to such creditors, and yet they become perfectly good unless attacked by such creditors; and if they shall fail to attack them for the period fixed by the statute of limitations, they become absolutely valid. And so no such deeds are called void in favor of *bona fide* purchasers. (47 N. H. 542; 18 Johns. 514.) Spencer, J., in Anderson v. Roberts, 18 Johns. 527–8, makes the term "void"

mean but voidable under some circumstances, and says "a thing is void which is done against law at the very time of doing it, and when no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who nevertheless cannot avoid it himself after it is done." This distinction may not be complete, but is sufficient to show that the term "void," even when used in the statute, does not necessarily mean an absolute nullity. So, in a contract for the sale of land or for a lease, it is common to insert a clause that the instrument shall be void in certain contingencies, yet it remains perfectly valid unless the provision is taken advantage of by the vendor or lessor.

The force of this term is learnedly discussed in Pearsoll v. Chapin, 44 Penn. St. 9, and many instances are there given and authorities cited to show that it is used loosely and indefinitely both in statutes and by courts, and does not usually mean that the act or proceeding is an absolute nullity. (See also Mitchell v. Parker, 25 Mo. 31.)

The chancery proceedings now under consideration cannot be considered a nullity, even if the court went beyond its powers. That court has always had jurisdiction over the person and estates of minors, and while it must be exercised according to law, yet if the court exceeds its powers under the law, it is not a naked assumption of power, as might be the case if the tribunal had no such jurisdiction. Its action, then, being not a nullity, but, if void at all, only relatively so, strangers cannot disregard it.

1. Were defendants purchasers without notice? McCoy, one of the Old Town Company, testifies that the lots belonging to the company were divided, and the one in controversy, with fifty or sixty others, fell to him. He speaks of a deed that included them, and that this and another were marked out of his deed when, as he supposes, Chouteau deeded to Huffman. The instrument by which he drew his lots is not given, and we are not advised whether the title, at the time of Chouteau's deed, was in him, or in him and the others. He says, however, that it was his interest that was sold. In 1866 he executed a quit-claim deed for the two lots to Chas. J. Thompson, one of the defendants, for

Kearney et al. v. Vaughan et al.

$200, and testifies that he told Thompson that he (McCoy) might have the legal title, but had no equitable right to the property. He testified at some length, and there is apparent contradiction in his testimony, arising principally from mixing up statements of what he knew and what he supposed to be true from seeing the papers, etc. He is very clear, however, that he made no claim to the ownership of the lots, although the title seemed to be in him, or in the Town Company, as the Chouteau deed was missing. Some of the defendants were real estate agents, and had abstracts of titles which left these two lots in McCoy, which was the reason they purchased of him. It is apparent that they did not suppose that he really owned them, and they gave him but a nominal consideration, their value being $4,000, and evidently supposed that by getting a quit-claim from him and his former co-partners they could cut out the title of the real owner, whoever he might be.

Saying nothing of the publicity of the judicial proceedings showing that the property belonged to the Scott heirs, and that the plaintiffs became purchasers, and of their effect as notice, the inquiry arises whether a purchaser who buys of one who, as he supposes, has the legal title, but who informs him that, even if it be so, he does not own the property and makes no claim to it, and for a nominal consideration obtains from him a quit-claim deed, can be called an innocent purchaser, and can be protected either in equity or under the registration act. Clearly not. The purchaser lacks the elements which are essential to the protection of innocent purchasers.

Judge Wagner concurring, the judgment will be affirmed. Judge Adams, having been of counsel, not sitting.