BENT and others *v.* MAXWELL L. G. & RY. CO. and others.

Filed May 3, 1884.

1. ABATEMENT OF SUIT—ANOTHER SUIT PENDING.
   Where it appears, in a bill to establish the right of infant claimants to an undivided interest in land to which all the parties interested are made parties, that another proceeding in equity, brought by some of the defendants only to terminate and extinguish the claim of complainants is still pending, a demurrer on the ground of another suit pending will be overruled, for it is apparent that the rights of complainants cannot be fully adjudicated in that cause for the lack of parties.

2. ACTION BY INFANT—APPOINTMENT OF "NEXT FRIEND"—PRESUMPTION.
   Where a bill is brought on behalf of infant complainants by their "next friend," it will be presumed that the "next friend" was duly appointed by the court, and leave given to file the bill. A demurrer for failure to show these facts on the face of the bill will be overruled.

3. EQUITY—SETTING ASIDE FRAUDULENT DECREE.
   A bill to annul a consent decree, on the ground that it was fraudulently obtained, where the effect will be to re-establish a prior decree in the same cause, is not demurrable because it fails to show that the decree which is to be so re-established was a proper one. That issue is not before the court.

4. SAME.
   A bill to impeach a consent decree, on the ground that it was fraudulently obtained, is not a bill of review where the parties to it necessarily differ from the parties to the proceeding in which the decree sought to be annulled was rendered.

5. SAME—CONSENT DECREE.
   A bill to annul a decree is not demurrable because it appears that the decree was entered by consent, where it is charged that the complainants were infants, and the consent, if any, was obtained by fraud and imposition.[1]

[1] As to power of guardian *ad litem* to bind an infant, see Kingsbury v. Buckner, 10 Sup. Ct. Rep. 638; Walters v. Hermann, (Mo.) 12 S. W. Rep. 890; Biddinger v. Wiland, (Md.) 10 Atl. Rep. 202; Bennett v. Bradford, (Ill.) 24 N. E. Rep. 630; Luck v. Atkins, (Ark.) 13 S. W. Rep. 1097; Cates v. Pickett, (N. C.) 1 S. E. Rep. 763.

6. SAME—WANT OF EQUITY—INFANCY—FRAUD.

A bill to set aside a decree, entered by consent against minor defendants, divesting them of an undivided interest in a large Mexican grant, and authorizing its conveyance by their guardian *ad litem*, in pursuance of a compromise, for a sum less than its real value, which charges that there was no consent in fact; that if it was given it was obtained by fraud, imposition, and false representations practiced upon their guardian *ad litem*, a Mexican woman, ignorant of the English language, unfamiliar with business or the proceedings of courts, unacquainted with the rights of complainants, with her duties as guardian, and with the land itself, its extent and value, and ignorant of the fact that congress had confirmed the grant, and that the court had, by decree, established the rights of complainants' ancestor, and of the share or right claimed by the latter in his life-time; and further setting out in detail the fraudulent devices by which she was convinced that complainants would be excluded from all enjoyment of the grant by the other owners thereof, and was persuaded to consent to the decree and execute the conveyance in pursuance of it,—is not demurrable for want of equity.

7. SAME—CONTROL OF INFANTS' REAL ESTATE.

Complainants' ancestor, in a proceeding to establish an equitable right to an undivided interest in land, recovered judgment, and a partition was ordered, but before the decree could be executed he died. *Held*, that his equitable right had become converted into a legal title, and so descending to complainants, his infant heirs, vested in them as a legal estate in land, which a court of equity is without jurisdiction to divest, in the absence of statutory authority, even for the purpose of nurture and maintenance, much less in pursuance of a compromise by their guardian *ad litem*, and this notwithstanding an equitable proceeding was still necessary to determine and separate their interest in the property.

8. VENUE—SUIT INVOLVING LAND—DIVISION OF COUNTY.

Where land was originally in one county, but by a new division it became located in another county, a suit, of which an in'erest in the land is the subject-matter, is properly brought in the county in which the land lies at the time the suit is brought, under chapter 2, Act 1876, § 1, (Prince's Laws, p. 130.)

*Wells, Smith & Macon* and *Caldwell Yeaman*, for plaintiffs in error.

*T. B. Catron* and *Frank Springer*, for defendants in error.

BELL, J.    This suit was brought to impeach a decree of the court in a former suit, to which the complainants herein were parties, on the grounds of fraud, imposition, and error.

From the facts stated in the bill it appears that about the twelfth day of September, A. D. 1859, Alfred Bent, Estefana Hicklin, Alexander Hicklin, her husband, and Teresina Bent instituted in the district court for the county of Taos (in which county the whole of the lands in question were then situate) their certain bill in equity against Guadalupe Miranda, Charles Beaubien, Lucien B. Maxwell, and Joseph Pley, alleging that Charles Bent, father of the said Alfred, Estefana, and Teresina, was, in his life-time, by virtue of a certain parol agreement made between him, said Charles Bent, of the one part, and said Beaubien and Miranda, of the other part, entitled in equity to the equal undivided one-third part of a certain grant of land, in the said bill fully described and set forth; that said Charles Bent departed this life intestate, leaving the said Alfred, Estefana,

and Teresina as his sole heirs at law, and in and by the said bill the said Alfred, Estefana, and Teresina prayed that they might be decreed entitled to said one-third part of the said lands, and that partition thereof might be made; that, pending said suit, said Charles Beaubien departed this life, and his necessary personal representatives were made parties thereto; that all said parties answered, denying the equities claimed in the said bill; that, pending said suit, said Teresina also intermarried with Aloys Scheurick, and the said Aloys was made party to the suit with the said Teresina; that said cause was continued, from time to time, until the May term, 1865, and that at said term, and on or about the third of June, 1865, a decree was made and entered in said cause, by which, among other things, it was ordered, adjudged, and decreed that the said Alfred, Estefana, and Teresina were, and were thereby declared to be, the heirs at law of the said Charles Bent, deceased, and as such heirs fully and absolutely entitled to and seized of the undivided one-fourth part of the said grant of lands, which said grant is now commonly known as the "Maxwell Grant," and which was then situated partly in the county of Taos and partly within the limits of the then territory of Colorado, and is now situate within the limits of the county of Colfax, in this territory, and partly in the state of Colorado; that by the said decree the said undivided one-fourth part of the said grant of lands was declared established and confirmed to them, the said Alfred, Estefana, and Teresina, and to their heirs and assigns forever, with the full and perfect right, power, and authority to possess and enjoy the same; and it was decreed that a just and equitable partition of the said grant should be made between the said Alfred, Estefana, Teresina, and the other parties to said suit who were declared by the said decree entitled to the remainder of the said lands; and that commissioners therein appointed to make said partition should lay off one-fourth of the said grant to the said Alfred, Estefana, and Teresina, and the remaining three-fourths to the said other parties entitled thereto; that by the said decree certain persons therein mentioned were appointed commissioners to make the said partition.

The bill further shows that, after the entry of the said decree of partition, and on or about the ———— day of December, 1865, and before partition of the said premises had been affected in pursuance of the said decree, the said Alfred Bent departed this life, intestate, leaving as his sole heirs the complainants herein, Juliano Bent and Alberto Silas Bent, then and still infants of tender years, and the complainant Charles Bent, then also an infant, and who since, and on or about the twenty-sixth day of April, A. D. 1881, hath come of lawful age; that on or about the ninth day of April, 1866, at a term of the said district court for Taos county then sitting, the death of the said Alfred Bent was suggested of record, and the complainants

herein, as his children and heirs at law, were made parties complain-
ant in the cause in his stead; and that afterwards, at the same term,
of the court, an order was made in the cause, wherein, after reciting
an agreement of the parties thereunto, Guadalupe Bent was appointed
guardian *ad litem* and commissioner in chancery for the complain-
ants herein, being the minor children of Alfred Bent, with full power
to execute deeds, or carry into execution all sales or transfers made
of their interests in and to the real estate therein described, to Lucien
B. Maxwell, one of the defendants in that cause, and the said cause
was then continued to the next term of the court; that afterwards, at
the September term, 1866, of the said district court, begun and held
on or about the tenth day of September, 1866, a certain other order
or decree was made and entered of record in the same cause, wherein,
after reciting the aforementioned decree appointing commissioners
to divide and separate one-fourth of the said lands to the complain-
ants in said cause, and that said decree had never been carried into
effect, and that, since the rendition thereof, a mutual agreement had
been made between the parties to that cause, settling and determin-
ing all equities in the same, it was ordered, adjudged, and decreed
that the decree aforesaid, and all orders made under it by virtue of
the same, should be set aside; and it was further ordered, adjudged,
and decreed, by mutual consent and agreement of said parties, that
the said Lucien B. Maxwell should pay to the complainant in that
cause eighteen thousand (18,000) dollars, as follows, to-wit: To the
said Teresina and Aloys, her husband, one-third part; and to the said
Estefana and Alexander, her husband, one-third part; and to the
complainants herein, the children and heirs of Alfred Bent, deceased,
the remaining one-third part, to be equally divided among the said
complainants, and to be paid into the hands of Guadalupe Bent,
widow of the said Alfred Bent, and guardian *ad litem* of the complain-
ants, for the purposes of the said division.   And it was further or-
dered, adjudged, and decreed that the said Estefana, Alexander,
Teresina, and Aloys, and the said Guadalupe Bent, guardian *ad litem*
of the complainants, within 10 days thereafter, should make, execute,
and deliver to the said Lucien B. Maxwell good and sufficient deeds
of conveyance of all their right, title, interest, estate, claim, and de-
mand of, in, and to the lands in controversy in that cause; the said
Guadalupe Bent in the name of the complainants herein, and the
others of the said complainants in that cause in their own names;
and that each of the said parties should pay the separate costs in
this suit made by them.

The bill then charges that although the said decree purports to be
made by consent of parties, nevertheless it does not appear by whom
these complainants were represented in that behalf, or who assumed
to consent to the said decree in behalf of these complainants.

v.3N.M.—11

The bill further charges that said decrees and orders, and each thereof, were duly enrolled in the said court.

The bill further shows that before the entry of the said last above-mentioned decree, and about the month of May, 1866, the said Aloys Scheurick, and Teresina, his wife, and the said Alexander Hicklin, and Estefana, his wife, by their deeds, in due form of law, had conveyed to the said Lucien B. Maxwell all the interest of the said Estefana and Teresina, being the undivided two-twelfths interest in the said grant of lands, and that likewise before the entry of said last-mentioned decree, and about the third day of May, 1866, the said Guadalupe Bent had also executed her deed of conveyance, wherein, after reciting that she had been appointed guardian *ad litem* and commissioner in chancery for these complainants, the minor heirs of the said Alfred Bent, deceased, by order of the said district court, the said Guadalupe Bent, by virtue of the power and authority in her confided by the said decree, and in consideration of the sum of six thousand (6,000) dollars, in her conveyance recited to have been paid to her by the said Lucien B. Maxwell, assumed and pretended to grant, bargain, and sell unto the said Maxwell all the right, title, and interest of the complainants herein, in and to the lands and grant in question, to-wit, the undivided one-twelfth interest in the said lands and grant.

The bill further shows and charges that the said Guadalupe Bent is the mother of the complainants herein; that she is a Mexican woman, and at the time of her appointment as guardian *ad litem* to these complainants, and at the time of the execution of the said pretended conveyance, and at the time of the entry of the said last-recited decree, she was wholly ignorant of the English language, unable to read, write, or speak the same; unfamiliar with business or proceedings of courts of law; unacquainted with the rights of the complainants, or her duties in that behalf, or of the bounds or extent of the said lands and grant, or of the character or value thereof; and ignorant of the confirmation of said grant by act of congress; and ignorant of the decree of the said district court directing partition of the said grant, as hereinbefore set forth, or of what part or share in the said grant was claimed by the father of these complainants in his life-time.

The bill then charges, fully and in detail, the various alleged false representations made to the said Guadalupe Bent by the said Maxwell, and by the said Scheurick, by procurement of the said Maxwell, and that, among other things, it was represented to the said Guadalupe Bent that the land or grant in question was comparatively worthless; that it contained little or no minerals, and was only fit for grazing land, and that it only extended to the north line of the territory of New Mexico, and that the said Maxwell was the owner of the

major part of the said grant, and was about to purchase the shares and interest of all the other owners therein, and would control the whole of said grant, and would exclude these complainants from all share and part thereof; and that she, the said Guadalupe Bent, was authorized to sell and convey the interest of these complainants, and that unless she should accept the said sum of six thousand (6,000) dollars, neither she nor these complainants would ever realize anything for the interest of these complainants in the said grant.

The bill then charges that, being moved and induced by the said representations, and by the great power and influence of the said Maxwell, the said Guadalupe Bent executed the pretended conveyance of the interest of these complainants in the said premises.

It further charges that the said Maxwell never paid to the said Guadalupe Bent, nor to these complainants, nor to any one for them, the said sum of $6,000.

It further charges that neither at the time of the entry of the said last-recited decree, at the September term, 1866, of the said district court, nor at any time before or after, did the said Guadalupe Bent, or counsel or solicitor for said Guadalupe Bent, or any other person authorized to agree or consent for these complainants in that behalf, in fact agree or consent as in said last-mentioned decree is falsely recited, or agree or consent to the entry of the said last-mentioned decree, or the vacation or setting aside of the former decree hereinbefore recited.

And it further charges that the said order and decree at the said September term, 1866, of the said district court, was procured to be entered in the absence of the said Guadalupe Bent, and without notice to her of any intention to apply therefor.

It further charges that if the said Guadalupe Bent ever did consent to the entry of the said decree, at the September term, 1866, of the said district court, said consent was obtained by the importunity and fraudulent and false representations of the said Scheurick, and without explanation to the said Guadalupe Bent of the true meaning, purpose, or effect of said decree; and that the said Guadalupe Bent, in and about giving such consent, was entirely ignorant of the effect of the said decree, and ignorant of the former decree, whereby the said Alfred, Teresina, and Estefana were invested with the one-fourth part of the said grant.

The bill further charges that the said Maxwell, or some other person or persons, by procurement of the said Maxwell, caused it to be falsely represented to the said district court that these complainants, or the said Guadalupe Bent in their behalf, had agreed and consented to the setting aside of the said decree first herein recited, and to the entry of the said last-mentioned decree, as the same was entered of record at the September term, 1866, of the said district court; and

that solely by reason of such false representations, and the concealment hereinafter charged, the said district court, without any reference to the master, and without any inquiry or judicial examination as to whether the said decree would be beneficial to the complainants herein, gave and entered the said decree.

The bill further sets forth the great value of the lands in the said grant, and that at the time of the entry of the decree at the September term, 1866, of the said district court, the interest of these complainants was reasonably worth the sum of one hundred thousand (100,000) dollars, and the same hath ever since then been appreciating in value.

The bill further shows that the father of these complainants, said Alfred Bent, left a considerable estate in houses and lands, other than said grant, and in money and personal property; and that the said Guadalupe Bent, the mother of these complainants, out of the said estate, was then and always afterwards well able to support and educate these complainants; and that at the time of the entry of the said decree, at the September term, 1866, aforesaid, of the said district court, there was no necessity for the sale of the interest of these complanants in the said lands.

The bill further shows that, all and singular, the facts therein set forth, by which the value and extent of the said grant, and the estate, real and personal, other than the said grant, left by the said Alfred Bent, and the ability of the said Guadalupe Bent, out of the said estate, to maintain and educate these complainants, and that, all and singular, the before-mentioned facts, touching the execution by the said Guadalupe Bent of the said pretended conveyance to the said Lucien B. Maxwell, and the fraud and imposition practiced upon her in procuring said conveyance, were, by procurement of the said Maxwell, concealed from the said district court at the time of the entry of the said last-recited decree, at the September term, A. D. 1866.

The bill then recites at length the various errors of law alleged to have been committed by the district court upon the foregoing statement of facts.

It further charges that the decree, so as aforesaid entered at the September term of the said district court, 1866, for Taos county, hath never hitherto been carried into execution; that no such conveyance as the said decree directed has ever been made by the said Guadalupe Bent, nor has the said Lucien B. Maxwell, or any one for him, ever paid the amounts therein directed to be paid to the said Guadalupe Bent.

The bill further recites that the said Maxwell Land Grant & Railway Company (assignee of said Maxwell) and the said Lucien B. Maxwell and Luz B. Maxwell, his wife, about the year 1870, exhibited in the district court, in and for the said county of Colfax, their

bill of complaint against the complainants herein and the said Guadalupe Bent, (then known as Guadalupe Thompson, she having intermarried with one George W. Thompson,) as administratrix of the estate of the said Alfred Bent, and George W. Thompson, her husband, setting forth, among other things, the said two decrees of the said district court of the county of Taos, and praying that the trust in said mentioned decrees established and declared might be adjudged terminated and extinguished; that these complainants, by George Boyles, their guardian *ad litem,* as also the other defendants, answered the said bill of complaint, and that thereafter a decree was entered in the said district court, whereby it was decreed that the said premises be and were held by the said Maxwell Land Grant & Railway Company free and discharged of any and all trusts, right, title, and interest in or to the same in favor of or appertaining to the said Guadalupe Thompson, either in her own right, or as admistratrix of the said Alfred Bent, deceased, the said George W. Thompson, her husband, and the said complainants herein, Charles Bent, Alberto Silas Bent, Juliano Bent, or any or either of them; that upon appeal of all of said defendants to the supreme court of the territory the said last-mentioned decree was affirmed, and that upon the further appeal of all of the said defendants to the supreme court of the United States the said last-mentioned decree was reversed, and the said cause was remanded back to the supreme court of the territory, and thence into the district court of the said county of Colfax; and that in the said last-mentioned court the said Maxwell Land Grant & Railway Company hath amended its bill in divers particulars, but sets up, nevertheless, the decree so as aforesaid entered at the September term, 1866, of the district court of said Taos county, and relies thereon, and prays as in the said original bill before amended; all of which these complainants allege is contrary to equity and good conscience.

The bill further shows that by reason of the decree so as aforesaid made and given at the September term, 1866, of the district court for Taos county, and the pretended conveyance by the said Guadalupe Bent of the interest of these complainants in the said premises, these complainants have been unable hitherto to have execution of the decree made and given as is above set forth, or to have partition of the said lands as in the said recited decree directed.

The bill then recites the conveyance in July, 1870, by the said Lucien B. Maxwell and Luz B. Maxwell, his wife, of most of the lands in the said grant to the Maxwell Land Grant & Railway Company, and it further recites the conveyance by said Maxwell and wife of portions of the excepted lands to various other parties, who are all made parties to this suit, so far as their names are known or could be learned.

The bill then prays that the decree of the said district court for said county of Taos, made and entered of record at the May term, A.

D. 1865, establishing the right of the complainant's ancestor, and the said Estefana and Teresina, in and to the equal undivided one-fourth part of the said grant of lands, and directing partition thereof, may stand, and be enforced and carried into execution in all things, and that, if need be, other commissioners be appointed to effectuate the said partition, (some or all of the original commissioners having died or left the territory,) and that, if need be, an inquiry be had, in such manner as the court may direct, as to what lands, if any, have at any time been conveyed by the said Maxwell to any person or corporation; that the decree aforesaid made and entered at the September term, A. D. 1866, of the said district court, in and for said county of Taos, be reversed, annulled, and from henceforth held for naught; that the pretended conveyance of the interest of these complainants in and to the said grant of lands, so as aforesaid pretended to be executed by the said Guadalupe Bent, (now Thompson,) may be declared null and void, and delivered up to be canceled, and that an accounting may be had with the parties who have held the lands since the time that the right of these complainants to share in them was determined, and that such net gains and profits as may be found to be due to the complainants be paid to them.

The complainants then pray for such further, or other and different, relief as may seem according to equity and good conscience.

To this bill, the material allegations of which we have recited, the defendants interposed a demurrer, which was sustained by the court below. The case comes before us now for review of the alleged errors of the court below in sustaining the demurrer. Several special causes of demurrer were assigned by the defendants, which we shall consider in their order.

The first is: "That it appears, from the said bill of complaint, that all the matters and things set forth in said bill, and the issues involved therein, are involved in another cause now pending in this court, wherein all the necessary parties to the said bill are parties."

It does appear by the said bill that another cause is pending in the court below between the plaintiffs and some of the defendants herein, but it is quite evident that to secure the relief prayed for by these plaintiffs all the parties necessary are not parties to the bill referred to. By this bill the plaintiffs demand relief against all persons now claiming to have an interest in the lands in question in both suits, and have properly made parties to it all the parties to the original bill, the decree in which this suit is brought to impeach, and every person claiming through or under any or either of them. It is quite clear that without making all the persons privately interested in the land in question parties to the suit the complainants would not be entitled to the relief they ask for, it being a well-established principle that no one ought to be affected by any decree without his first being heard, and certainly every person now claiming interest in these

lands would be affected by the relief which is prayed for on behalf of the plaintiffs. The rule, as laid down by high authority, is as follows:

"If it appears by the bill that another suit is pending relating to the same matter a defendant may demur, Such demurrer, however, will not hold unless it appears by the bill that the suit already pending will afford to the plaintiff the same relief as he would have been entitled to under the bill which is the subject of the demurrer." I Daniell, Ch. Pr. 561.

For the reasons stated we think that this cause for demurrer was not well founded.

The second cause for demurrer assigned is "that the said bill is brought to reverse and annul a decree made and entered by consent, as appears upon the face of the decree itself, without making any sufficient showing that said consent was not given."

It is a well-settled rule of law that a decree made and entered by consent cannot afterwards be impeached by the parties consenting thereto, but this rule is confined to cases where the parties being *sui juris*, and with full knowledge of the force and effect of the proposed decree, have knowingly consented thereto. "A decree by consent between competent parties is binding, unless procured by fraud." Jer. Ch. 203; 1 Barb. Ch. Pr. 373. The bill in this case, as we have seen, charges, not only that no consent was, in fact, given to the entry of the decree sought to be reversed, but it further charges fully and explicitly that, if any such consent was given, it was obtained by fraud, false representation, and imposition. The second special cause for demurrer should, in our opinion, have been overruled.

The next cause for demurrer is: "That the said bill is, in fact, a bill of review brought to reverse and annul a decree rendered by consent, and does not set forth facts sufficient to entitle complainants to the relief prayed for."

This leads us to consider more fully the character of the bill in question. It was brought by the plaintiffs in the court below, for the purpose of impeaching a decree formerly rendered in another cause, by consent, upon the ground that that consent was obtained by fraud, imposition, and false representation. It is so far only a bill of review as any original bill would be which had for its object the reconsideration of a decree entered in another cause; but the parties to it necessarily differ from the parties to the bill of review, inasmuch as that no person is properly made party to a bill of review save parties to the original bill sought to be reviewed, and their privies. We think that, in order to obtain the relief asked for, these plaintiffs were not only entitled to proceed by original bill, but that in no other manner could they secure relief. The rule, as laid down by the text writers, is:

"When a decree has been made by consent, and the consent has been fraudulently obtained, the party aggrieved can only obtain relief by original bill. A bill to set aside a decree for fraud must state the decree, and the proceed-

ings which led to it, with the circumstances of fraud upon which it is impeached. The prayer must necessarily be varied according to the nature of the fraud used, and the extent of its operation in obtaining an improper decree." Ad. Eq. 420. "A bill to impeach a decree for fraud used in obtaining it, sufficiently explains its own character. It may be filed without leave of the court, because the alleged fraud is the principal point in issue, and must be established by proof before the propriety of the decree can be investigated. And where a decree has been so obtained, the court will restore the parties to their former situation, whatever their rights may be." Id. 419, 420. "If, however, a decree has been obtained by fraud, relief may be had against it by original bill." 1 Jer. Ch. 203; 1 Barb. Ch. Pr. 373. "Where a decree has been made by consent, and the consent has been fraudulently obtained, the party aggrieved can only be relieved by original bill. A bill to set aside a decree for fraud must state the decree, and the proceedings which led to it, with the circumstances of fraud on which it is impeached." 2 Daniell, Ch. Pr. 1584, 1585.

It is clear from these authorities that the bill in this case was properly brought as an original bill, and it does, we think, set forth facts sufficient to entitle the complainants to the relief prayed for, and that this assignment of cause for demurrer is not well founded.

The fourth special cause assigned for demurrer is: "That the said bill in effect seeks to re-establish a decree that has been set aside and annulled by the court that rendered it, without any showing that the decree sought to be re-established was a proper decree, or founded either in law or in fact."

It is a sufficient answer to this cause for demurrer that it is not the duty of this court at this time to consider whether or not the decree sought to be re-established was a proper decree. That decree is not attacked by this proceeding, and for the purposes of considering this case it must be assumed that that decree was properly rendered by a court of competent jurisdiction, upon a sufficient showing of facts to warrant its entry. Whether that decree was well founded either in law or in fact is therefore not now before us.

The fifth cause assigned for demurrer is: "That the said bill appears to be brought on behalf of Juliano Bent and Alberto Silas Bent, infants, by one George W. Thompson, their next friend, without any leave of court being given to the said Thompson to file the same in behalf of said infants, and without said Thompson being lawfully appointed as next friend for said infants."

We are not aware of any rule of law which requires that it should be shown in the bill that an order appointing a *prochein ami* had been entered of record before the bill was filed. The recital of the fact that the infants appear by a next friend, is in our judgment sufficient; the presumption being that whatever steps, if any, were necessary to be taken to warrant that appearance had been properly taken before the bill was brought. Every presumption is in favor of the regularity of the proceedings of a court of general jurisdiction, and unless, as in some states, the statute requires an order of that kind to be entered before the suit will be entertained, we do not think that it is neces-

sary that the bill should recite the fact of such an order. "The next friend will be admitted by the court without any other remark than the recital in the court." *Miles* v. *Boyden*, 3 Pick. 213; *Judson* v. *Blanchard*, 3 Conn. 579. We think, therefore, that this cause for demurrer cannot be sustained.

The sixth special cause for demurrer assigned is: "That the said bill does not show that the complainants are entitled to have the said decree that was set aside re-established or enforced, or that the said decree was a lawful or proper decree under the circumstances and evidences and pleadings of that cause."

This question is not before us, as we have already stated fully in considering the fourth cause for demurrer. That decree has not been attacked, and we are not authorized here to review the law and facts upon which it is founded.

The seventh special cause for demurrer assigned is that "said bill does not show sufficient facts to entitle complainants to have the decree entered by consent set aside, or to have the one that has been set aside by the court reinstated and enforced."

This brings us to a consideration of the ground upon which the relief sought for is asked. The decree which is sought by this proceeding to set aside and annul was entered, as the decree itself recites, by the consent of the parties. Among the parties whose consent was necessary were the complainants in this case, all of them at the time being infants of tender years. It is now alleged on their behalf that that consent was in fact never given, but that if it was given it was given through fraud, imposition, and false representation, practiced upon their guardian *ad litem* in that case, whom they allege was an ignorant person, and wholly ignorant of the rights of these plaintiffs in the premises. Had the proceedings been regular, had the court been fully advised of the law and the facts, had no fraud been practiced, and had the court jurisdiction to make the decree in question, these infants would undoubtedly be bound by it to the same extent as would adults under the same circumstances. Nor does it matter in this case that the decree complained of was apparently a decree in favor of the infant complainants; if it was obtained by fraud, it can be as well attacked whether the complainants here were plaintiffs or defendants in that cause. Upon this subject the text writers say:

"Though an infant is, in ordinary cases, bound by the effect of any suit or proceeding instituted in his behalf, and for his benefit, yet, if there has been any mistake in the form of such suit, or of the proceedings under it, or in the conduct of it, the court will, upon application, permit such mistake to be rectified." 1 Daniell, Ch. Pr. 73.

Of course, it follows that if the court will, upon application, permit a mistake to be rectified in such a case, for stronger and better reason the court will rectify such mistake where it has resulted from fraud and false representation.

"To impeach a decree on the ground of fraud or collusion, an infant may proceed either by a bill of review, or a supplemental bill in the nature of a bill of review, or he may proceed by original bill. He may also impeach a decree on the ground of error by original bill, and he is not obliged, for that purpose, to wait until he has attained twenty-one." Id. 164-173.

As we have already stated, a court of chancery, always jealous of the rights of its wards, will interfere to rectify a wrong committed against their persons or property, whether they have been in form plaintiffs or defendants in the proceeding in which the wrong was inflicted. The rule upon this subject is laid down to be as follows:

"An infant, when complainant, is as much bound by a decree as an adult. In this respect courts of equity follow the rule of law, but if gross laches appear upon the part of the *prochein ami*, the infant may open the decree by a new bill. In general, infants are bound as much as adults by the conduct of their solicitors, as respects matters of practice, acting *bona fide* in their behalf, but not as to matters of mistake, fraud, or collusion." Jer. Ch. 821. "As respects infants, although the court will not, when they are concerned, make a decree by consent without referring it, yet, when once a decree has been pronounced without it, the infant will not be permitted to dispute it, unless upon the same ground as an adult might; such as fraud, collusion, or error." Id. 202; 1 Daniell, Ch. 164; 1 Smith, Ch. 419.

We think that the bill under consideration does state facts sufficient to warrant the interference of a court of equity in their behalf, and that, under the authorities cited, they have properly brought their bill in the form of an original bill to impeach the decree complained of on the grounds of fraud, imposition, and error. But, aside from any question of fraud or false representation, we are of opinion that the decree complained of was wholly erroneous, in undertaking, at that time and under the circumstances, to direct the sale and conveyance of all the right, title, interest, estate, claim, and demand of the complainants in the real property therein referred to.

There can be no doubt but that the decree of the third of June, 1865, of the district court of Taos county, referred to and set forth at length in the bill herein, vested in Alfred Bent, the father of these complainants, a legal estate to the undivided one-twelfth part of the lands therein referred to, and now commonly known as the Maxwell Grant or Estate, as one of the heirs at law of Charles Bent, deceased. The recital in that decree is as follows:

"Furthermore, that the said Alfred, Estefana, and Teresina, upon the death of their said father, inherited, succeeded to, and became seized of the said undivided one-fourth part interest and estate which belonged or pertained to the said Charles Bent, in law and equity, in and to the lands or real estate in the entire tract or grant aforesaid at the time of his decease; and that the said Alfred, Estefana, and Teresina are now fully and absolutely entitled to and seized of the undivided one-fourth part of the interest and estate of the said tract of land or grant. Furthermore, that the said undivided one-fourth part in and to the said tract or grant of land, or real estate, be and hereby is declared established and confirmed to them, the said Alfred, Estefana, and Teresina, and to their heirs and assigns, forever, with the full and perfect right, power, and authority to possess and enjoy the same."

This, as we have already stated, vested in Alfred Bent a legal estate in the said lands, and when, in December, 1865, the said Alfred Bent died intestate, leaving these complainants as his sole heirs at law, the legal estate so vested in him passed, by operation of law, to these complainants.

It has been suggested by counsel for the defendants in error, in their argument, that the estate vested in these infants was only equitable, because it required a suit in equity to ascertain and determine it, and because the interlocutory decree, on which the plaintiffs in error rely, found that they were justly and equitably entitled; and, further, that it was equitable, because the supreme court of the United States refers to it as such in *Thompson* v. *Maxwell,* 95 U. S. 393; the language of the court in that case being: "The original bill was instituted by the heirs of Charles Bent to establish an equitable interest in the undivided share of the lands." We hardly think this suggestion or argument is worthy of further consideration. It is enough to say that the decree of the court in that suit in equity changed what had theretofore been an equitable interest into a substantial and well-defined legal interest. It was for that very purpose that that suit was brought, and its purpose was accomplished and declared by the decree in question. It being a legal estate with which these infants were vested, it was error for the district court of Taos county, at that time, to make a decree authorizing any person to divest them of that estate. The law on this subject is well-settled:

"With reference to the real estate of an infant, it may be said that neither a court of law nor equity has any inherent jurisdiction to direct a sale of it." Tyl. Inf. & Cov. § 193, p. 299.

And, discussing the subject, the same author says:

"Chancellor HART said, in a recent case: 'I have no authority to bind an infant's real estate. That was decided long ago by Lord HARDWICKE, in *Taylor* v. *Philips,* 2 Ves. Sr. 23.' The chancellor has never since attempted to deal with the legal inheritance of infants without the aid of parliament." *Russel* v. *Russel,* 1 Moll. 525.

"The jurisdiction, therefore, in cases of this kind, rests altogether upon the statute. Independently of an authority derived from the legislature, the court has not the right to entertain the question, or direct a sale." *Garmstone* v. *Gaunt,* 1 Colly. 577; *Rogers* v. *Dill,* 6 Hill, 415–417; *Onderdonk* v. *Mott,* 34 Barb. 106.

"By reason of this rule, statutes exist, both in England and in all of the American states, conferring jurisdiction upon the courts to order the sale and conveyance of an infant's real estate in the cases specifically provided for. * * * It seems to be the doctrine, sustained by the preponderance of authority, that a court of equity has no power, as a part of its jurisdiction over infants, to order a sale of the infant's real estate for the purpose of maintenance, education, or investment." 3 Pom. Eq. Jur. § 1309; *Williamson* v. *Berry,* 8 How. 498, 551; *Rogers* v. *Dill, supra; Faulkner* v. *Davis,* 18 Grat. 651; *Kearney* v. *Vaughan,* 50 Mo. 284.

Another authority says:

"In cases where a trust exists, the degree of authority, as well as the manner of its exercise, will depend on the terms of the instrument creating it.

In either case the court is thrown upon its inherent jurisdiction, and has authority to manage the estate during minority, and to apply the proceeds for the infant's benefit; but there is no inherent power to dispose of or alter the estate itself." Ad. Eq. 284.

In the light of these authorities we think that the decree complained of by the complainants was clearly erroneous, because the court had no jurisdiction whatever to make it. While, as stated in some of the authorities cited, in all the American states special statutory authority has been given to the courts of chancery to dispose of infants' real estate, under specified restriction, we find that in the territory of New Mexico no such statute was in existence at the time the decree was made, in 1866, nor was any such statutory authority conferred upon the courts of this territory until 1872, when, evidently recognizing the necessity of legislation of that kind, the legislature enacted as follows:

"The district and also the probate courts, in this territory, shall have jurisdiction, within the counties wherein the same are held, to decree the sale, hypothecation, or other disposal of the real estate, situated in said counties, of minors and persons known as *non compos mentis*." Act 1872, c. 16, (Prince's St. p. 485.)

Without such authority as was conferred upon the court by this act, we are of the opinion that the district court for Taos county erred when it made the decree in question in this suit, and that the complainants herein are entitled to maintain the bill which they have filed for the correction of this error, by which they have, as we think, been unlawfully divested of their legal interest in the grant of lands in question.

It is suggested by counsel, though not in the court below, and therefore not necessarily considered here, that this suit was improperly brought in the county of Colfax. In respect of this suggestion, we are of opinion that the suit could not have been brought elsewhere under the statute.

By chapter 2 of the acts of 1876 (Prince's Laws, p. 130) it is provided:

Section 1. "All civil actions which may hereafter be commenced in the district courts, shall be brought and shall be commenced in counties as follows, and not otherwise: * * * (4) When lands or any interest in lands are the subject of any suit, in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situated."

The land in question in this suit was originally a part of Taos county, but by various legislative enactments, changing the boundaries of counties and creating new counties, it had come to be within the limits of Colfax county at the time that this suit was brought, and therefore the suit was properly brought in that county. The counsel who have suggested this proposition acted upon this theory of the law when they brought their suit of *Thompson* v. *Maxwell*, to review the decree of the court which is in question here. They brought that

suit in Colfax county, and, doubtless, for the reason that, under the law, they would not have been authorized to bring it elsewhere.

No other questions have been raised by the demurrer than those we have considered.

It follows, from the views which we entertain, that the court below erred in sustaining the demurrer interposed herein, and that the judgment entered therein should be reversed: and it is so ordered.

BRISTOL, J. I concur.