| 53 | 37 |
| 54 | 484 |
| 53 | 37 |
| 55 | 491 |
| 53 | 37 |
| 81 | 452 |
| 53 | 37 |
| 85 | 106 |

## SHUMARD V. PHILLIPS.

Decided March 8, 1890.

1. *Court—Illegal meeting of officers—Subsequent rightful convening.*

Where the officers attempt to hold court prior to the time fixed by law, and adjourn from day to day until after that time, judgments of the court rendered subsequent to the.rightful convening are valid.

2. *Guardianship—Grant of letters of, by clerk—Validity against collateral attack.*

Where the person, to whom letters of guardianship are issued by the clerk in vacation, files his bond, enters upon his duties as guardian and renders his account to, and is recognized by, the probate court as guardian, the validity of his appointment cannot be collaterally questioned, although no subsequent confirmation by the court of the grant of the letters is shown.

3. *Equitable jurisdiction—Sale of infant's land—Maintenance.*

The act of December 23, 1846 (Gould's Digest, p. 134), giving the probate court jurisdiction to order the sale of a ward's lands for purposes of *investment*, did not deprive the court of equity of its jurisdiction to order the sale of an infant's land for his *maintenance*.

4. *Query: Is chancery jurisdiction over estates and persons of minors repealed by the Constitution?*

Did the Constitution of 1874, in granting to the probate court exclusive original jurisdiction in matters relative to guardians (Art. 7, section 34), deprive the court of chancery of its ancient jurisdiction over the persons and estates of minors?

APPEAL from *Sebastian* Circuit Court, Fort Smith District.

JOHN S. LITTLE, Judge.

*J. T. Hurley, P. J. M. MacGreevy* and *Duval & Cravens* for appellants.

1.   Isabella Shumard was never appointed guardian by any legal court, or by any clerk of any court in vacation. The law under which she claimed to act is found in ch. 81, Gould's Dig., secs. 1, 2, 9, 10, 12, 28, etc.

There could be no legal court held on July 18, 1870, and as a probate court for the Fort Smith district, it never in law had an existence.   Gould's Dig., ch. 49, p. 316; acts 1861, p. 432-4.   On the 18th July, 1870, the court should have been held at Greenwood.   Acts 1861, sec. 2, p. 432.   The letters granted Mrs. Shumard were void.   2 Ark., 229; 20 Ark., 77; 27 Ark., 349; 48 Ark., 229; 48 Ark., 155; 24 Ark., 479.

Nor were the letters issued by the clerk in vacation as provided by law.   Gould's Dig., ch. 81, sec. 2; 5 Ark., 367; 32 Ark., 97; 2 Wall., 342.

No application was ever filed; the approval of the bond and order for the letters were a nullity.   32 Ark., 97.

2.   The sale was void because a court of chancery had no jurisdiction.   Exclusive jurisdiction was vested in the probate court.   Gould's Dig., ch. 48, sec. 2; Const. 1836, art. 6, sec. 10, and sec. 3 of amendment to same, 1848; sec. 12, art. 12, Const. 1864; sec. 5, art. 7, Const. 1868; Acts 1861, sec. 9, p. 434; 26 Ark., 373; 33 Ark., 727; 34 Ark., 63; 36 Ark., 383; 40 Ark., 411; 36 Ark., 390; 34 Ark., 71.

The exclusive jurisdiction of probate courts is settled by 5 Ark., 385; 7 Ark., 48; 11 Ark., 519; 17 Ark., 122; 18 Ark., 600; 23 Ark., 93; 26 Ark., 421; 27 Ark., 564; 34 Ark., 63; 36 Ark., 529; 40 Ark., 441; 48 Ark., 544.

3. The circuit court which made the order commenced the 17th of October, 1870, at Fort Smith, and was not a legal court. 27 Ark., 349; Act 1869, p. 31, adjourned session; 2 Ark., 229; 20 Ark., 77; 24 Ark., 479; 27 Ark., 349; 34 Ark., 575; 48 Ark., 155, 227-9.

*E. E. Bryant* for appellees.

1. In the absence of a statute conferring jurisdiction on some court to order the sale of an infant's land for his maintenance and education, chancery would have inherent jurisdiction to make such order. 38 Am. Rep., 13; 46 Am. Rep., 418; 37 Am. Rep., 111; 1 Tenn. Chy., 298; 4 Heisk., 370; 3 Bland, 186; 4 Atl. Rep., 886; 3 John. Chy., 347; 5 John. Chy., 163; 38 Barb., 473; 3 Denio, 18; 2 Gr. Ch., 20; 59 Ga., 722; 11 Ired. L., 616; 2 Kent, Com., 230; Story, Eq. Jur., sec. 1357; 2 Perry, Trusts, sec. 605; 45 Ark., 41-46.

Where equity has original jurisdiction, it is not taken away by statute conferring jurisdiction in similar cases upon another court, unless the statute expressly or by necessary implication excludes the equity jurisdiction; the jurisdiction becomes concurrent in the two courts. 55 Am. Dec., 74 and note; 18 Ark., 583; 33 Ark., 425; 28 Ark., 19; 38 Ark., 406; 64 Ala., 350; 24 Gratt., 315; 82 N. C., 328, etc., etc.; Pom., Eq. Jur., sec. 182; 45 Ark., 46.

2. Since the clerk could have issued letters in vacation (Gould's Dig., ch. 81, sec. 2), their issuance on petition, affidavit and bond and the subsequent recognition by the court was a sufficient compliance with statute. But if irregular, they are not assailable collaterally. Schouler, Ex'rs., etc., sec. 192; 39 Ill., 554; Rorer, Jud. Sales, secs. 482, 284; 67 Am. Dec., 298; 16 Tex., 417; 12 Tex., 449; 18 Tex., 179; 44 Ark., 411; 26 Ark., 421, 13 Ark., 178.

3. The court was sitting at Fort Smith, and held by the proper person as judge, and the order was made Novem-

ber 5, 1870, within the time for holding the October term of the circuit court. Acts 1869, adjourned session, p. 31. All presumptions are in favor of the legality of the courts, in the absence of showing to the contrary. 16 N. E. Rep., 378, 383; 4 N. E. Rep., 449; 32 Ark., 691.

*Clayton, Brizzolara & Forrester* of counsel for appellees.

COCKRILL, C. J. This is an action of ejectment brought by the appellants. They deraign their title to the land in controversy from the government. The appellees assert that the appellants' title was divested by sale under a decree of the Sebastian circuit court, and has come to them through conveyances from the purchasers at the judicial sale. The validity of the decree under which the sale was had is the sole question for our determination. The decree purports to have been entered by the Sebastian circuit court on the 5th day of November, 1870, upon the petition of the plaintiffs' mother who claimed to be acting in the capacity of their statutory guardian—they being infants at the time. The object of the petition, which was attained by the decree entered in pursuance of its prayer, was to sell the land in dispute for the support of the infants. The sale took place in January, 1871, and was soon after regularly confirmed. The decree is assailed upon the grounds, (1) that the court rendering it was not held at the time or place prescribed by law; (2) that the petitioner for the sale was not the statutory guardian of the minors and had no authority to appear for them, because appointed by a probate court held at a time and place not prescribed by law; and (3) that in any event, the probate court had exclusive jurisdiction of the estates of the minors, and that the circuit court was without power to order the sale. The argument is, that for each of these reasons the decree of the circuit court is *coram non judice* and void, and that the title of the appellants is, therefore, unimpeached.

The confusion about the time and place fixed by law for the courts to convene comes from that prolific source of evil, the division of a single county into two judicial districts, which was begun in the session of the legislature of 1860-1, when the division of Sebastian county was made. The statute provided for holding probate and circuit courts at Fort Smith as well as at Greenwood, the county seat, and fixed the times for them to convene at each place. For a time the local authorities acted under the belief that the county seat had been removed by an order of the county court, in pursuance of a vote of the people, from Greenwood to Fort Smith, and that Fort Smith was the only legal place for holding courts in the county. During that time the holding of courts at Greenwood was abandoned. See *Patterson v Temple*, 27 Ark., 202, and *Jones, ex parte*, 27 Ark., 349.

It was during this time that the orders now questioned were made. The probate judge undertook to hold probate court at Fort Smith on the day the law prescribed for the meeting of that court at Greenwood, and on that day caused an order to be entered on the records appointing Mrs. Shumard guardian of the plaintiffs; and the circuit court, which rendered the decree upon her petition for the sale of her children's lands, convened at Fort Smith, as at the opening of a regular term, at a time not authorized by law. The latter court continued in session, however, adjourning from day to day, until the fifth Monday after the fourth Monday in September, which was the time prescribed by law for the opening of the fall term of the circuit court at Fort Smith. Act February 4, 1869; Jones, *ex parte, supra*. When the court convened on that day at the place prescribed by the statute, it was invested with all the judicial power conferred upon it by law. The previous illegal meeting of the officers had no blighting effect upon the subsequent rightful convening of the court, and its judgments thereafter were as binding as those of the same court at any other regular term.

1. Court—Illegal meeting of officers—Subsequent rightful convening.

The decree in controversy was rendered after the court had rightfully convened and while it was legally in session. The question therefore is, had the court jurisdiction to order the sale of the infants' lands upon the petition of Mrs. Shumard? In answering this question we are not embarrassed by the appearance of a stranger as next friend for a minor, invoking the power of the court for the sale of the infant's estate. For, regarding the action of the probate court in ordering the appointment of Mrs. Shumard as a nullity, upon the ground that the order was made when the court was not legally in session, subsequent action had in reference thereto shows that she was clothed with the authority and responsibility of a statutory guardian. The clerk of the probate court at the time indicated, as now, was authorized to appoint guardians in vacation, subject to the approval of the court. When letters of guardianship are issued by the clerk and a bond is filed with him, the person to whom the letters issue is authorized to enter upon the discharge of the duties of guardian; and, as was said by Judge Walker in delivering the opinion of this court in *Knott v. Clements*, 13 Ark., 335, the letters so issued must be regarded as legally granted until it is shown that they have been rejected by the court; the silent acquiescence of the court in the action of the clerk in vacation being taken as confirmation of the letters issued by him, as against collateral attack upon the guardian's authority. In this case the probate court for the Fort Smith district of Sebastian county was the court having jurisdiction to issue or confirm letters for the guardianship of the plaintiffs, for they were domiciled in that district and all the property of which they were seized appears to have been situated therein. The letters were issued by the clerk in the vacation of that court to Mrs. Shumard after she had entered into the statutory bond with sureties. The previous unauthorized action of the judge in ordering her appointment neither added to, nor detracted from, the right-

2. Guardianship—Grant of letters by clerk—Validity against collateral attack.

ful action of the clerk in granting the letter. No subsequent confirmation of this grant of letters is shown or disproved; but, conceding that none was had, it appears that Mrs. Shumard rendered her accounts to and was recognized by the probate court as guardian. She comes then within the rule laid down in *Knott v. Clements*, and the validity of her appointment cannot be questioned in this collateral attack. *Dodge v. Cole*, 97 Ill., 351.

The question, therefore, is reduced to this: had the circuit court in 1870 jurisdiction to order the sale of an infant's lands for the maintenance of the infant upon the petition of the statutory guardian? It does not appear expressly whether the guardian invoked the aid of the common law or equity powers of the court in presenting her petition for the sale. But that is immaterial if the circuit court had jurisdiction to grant the relief sought, for the court being clothed with general jurisdiction at law and in equity, the question is not one of proper procedure, but of power. *Harris v. Townsend*, 52 Ark., 411.

Jurisdiction over the estates of minors was exercised by courts of equity from the time of their establishment. Their power to control the realty and sell the personalty of the minor for his benefit was never doubted; but the power to divest the infant of the title to his realty was at least not generally exercised by the English courts, and its existence has been denied by some American tribunals. See *Faulkner v. Davis*, 18 Gratt., 663.

The Supreme Court of Illinois find the reason of the English rule in the aversion of the English law to the free disposition of real estate, and as the policy of this country was the reverse of that, the English rule, they conclude, found no place in our jurisprudence. *Dodge v. Cole*, 97 Ill., *supra*. Another and more obvious reason is that assigned by Chancellor Cooper, to wit:—that the rule is based not upon a question of policy, nor upon the lack of the court's jurisdiction to act upon the realty, but rather in the minor's

*3. Equitable jurisdiction—Sale of infant's land—Maintenance.*

want of power to convey—the court being unable to supply him with the power or to authorize another to do for him what he could not do himself. *Gray v. Barnard*, 1 Tenn. Chy., 298; *Williams v. Williams*, 1 Tenn. Chy., 306; *Kearney v. Vaughan*, 50 Mo., 284. This reason is substantiated by the practice of the courts of chancery when the title to lands was in a trustee for the minor's benefit. The court then found no difficulty in divesting the title by acting upon the trustee who was *sui juris* and could be compelled to convey. *Gray v. Barnard, supra; Anderson v. Mather*, 44 N. Y., 260.

In this State the difficulty of divesting the title has been removed by statute—a vestige of the ancient practice still remaining in allowing the infant one year after he has obtained his majority to show cause against a judgment in certain cases. Mansf. Dig., sec. 5184. Whatever the effect of this section may be, it can have no influence in this case, if for no other reason, because no attempt to show cause against the decree was made within the year of grace allowed. See Schouler Dom. Rel., sec. 357.

Courts of probate had jurisdiction of the management of the estates of minors from the outset in this State, but not until the passage of the act of December 23, 1846 (Gould's Dig., p. 134), did they have power under any circumstances to order the sale of the ward's lands; but, says Judge Eakin in the case of *Reid v. Hart*, 45 Ark., 41, chancery had such jurisdiction all the while. And this may be said to be in accordance with the weight of American authority. *Dodge v. Cole*, 97 Ill., *supra; Gray v. Barnard*, 1 Tenn. Chy., *supra; Kearney v. Vaughan*, 50 Mo., *supra; Goodman v. Winter*, 64 Ala., 410; *Dorsey v. Gilbert*, 11 Gill. and J., 89; *Huger v. Huger*, 3 Des., 18; Matter of Salisbury, 3 Johns. Chy., 347; 2 Kent, Com., 230; Story, Eq. Jur., sec. 1357.

Did the grant of jurisdiction to the probate court oust the jurisdiction of equity?

The power of the chancery court in such cases was recognized by the judges who delivered the opinions of this court in the cases of *Myrick v. Jacks*, 33 Ark., 425, and *State v. Grigsby*, 38 Ark., 406. The general rule is that the inherent jurisdiction of equity is not destroyed by the grant of jurisdiction in similar cases to another tribunal, unless the intention of the law makers appears to be otherwise. *Menifee v. Menifee*, 8 Ark., 9; *King v. Payan*, 18 Ark., 583; *Myrick v. Jacks, supra*; *State v. Grigsby, supra*. The rule is illustrated in the grant of a limited jurisdiction in the assignment of dower to the probate courts, which the court in *Menifee v. Menifee* declined to consider as exclusive to any extent of the jurisdiction of equity. *Hilliard v. Hilliard*, 50 Ark., 34. But, as the statute stood at the time of the decree in this cause, no authority to sell the ward's lands for his maintainance was expressly granted to the probate court. (Gould's Dig., p. 134.)   As that court had power to sell, its judgments ordering a sale for the maintenance of a minor would doubtless be regarded as valid on collateral attack; but, as there was no express grant to the probate court of an adequate remedy in such cases, it cannot be said that the chancellor was shorn of the power which he has always exercised.

How far we had abandoned the ancient jurisdiction of equity over the persons and estates of minors prior to the adoption of the Constitution of 1874, or what the effect of the grant of jurisdiction to the probate courts by that instrument is, it is not material now to consider. It is sufficient to ascertain that the chancery court had jurisdiction over the estate in the case presented.

Query: Does the Constitution take away equity jurisdiction over persons and estates of minors?

As the decree, which is the basis of the appellees' title, is not void, the judgment must be affirmed.