Reinhardt. Adm'r. vs. Gartrell.

REINHARDT, ADM'R, V. GARTRELL.

1. ADMINISTRATION—*Jurisdiction of Probate Courts:*
    Art. VII, Sec. 34, Constitution of 1874, relegated to the Probate Courts their old jurisdiction in matters of administration, etc., which had been transferred to the Circuit Courts by Act of 16th April, 1873, without restriction or quali-fication.

2. ——————*Jurisdiction of Chancery Courts:*
    Courts of Chancery have no power to take administration cases out of the Pro-bate Courts for the purpose of proceeding with the administration, but may correct any fraud in the settlements of administrators and executors. When that is done, if there be still a necessity for further proceedings in the admin-istration, they should be had in the Probate Court. But if there be no such necessity—if the assets be all collected and the debts ascertained, and nothing remains but to fix the liabilities of administrators, executors and their sure-ties, and the rights of creditors, heirs, legatees and distributees, and make adjustment on equitable principles, all this can be better done in Chancery, and the cause should be retained there for completion.

3. ——————*Practice in Chancery:*
    In referring administration settlements to a master for the correction of fraud, the Chancellor should find and designate the points in which the fraud con-sists, and confine the reference to those points; and his finding of fraud should always be upon the allegations of the bill, specifically pointing it out, and not upon vague and general charges. Proof of the fraud devolves upon the party alleging it.

4. *Parties in Chancery:*
    Sureties of an administrator are proper parties to a bill to correct fraud in his account.

APPEAL from *Prairie* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Gatewood—Clark & Williams*, for appellant.

*Compton, contra.*

Reinhardt, Adm'r. vs. Gartrell.

EAKIN, J. :

This bill was filed February 12, 1876, by the widow and children of Francis C. Gartrell, deceased, who were devisees and legatees, equally, under his will, against D. F. Reinhardt, the executor, and his sureties. It charges fraud in his settlements, seeks to have them re-opened, a re-statement of the accounts and a decree against the executor and his sureties, in favor of the several complainants, according to their rights. It seems the debts of the estate have been paid up, leaving nothing to be done, beyond making a fair distribution.

The sureties demurred: Because, 1st. There was no equity in the bill. 2d. No fraud was shown. 3d. They were joined in the bill as defendants, when their liability was only at law, after the liability of their principal might be established. The demurrer on hearing of the cause, was overruled, and it may be convenient now to dispose of this branch of the case *in limine*.

Courts of probate, during their existence in this State, have ever had and still have exclusive original jurisdiction in the matter of the administration of the estates of decedents. This was statutory until the abolition of these courts, by act of April 17, 1873. By an act approved April 16, 1873, this *"exclusive original jurisdiction,* in all matters pertaining to probate and of administration," was transferred to the Circuit Court. The experiment was not satisfactory, and by the Constitution of 1874, the Probate Courts were re-established. It was provided, (Art. VII, Sec. 34,) that they should have *"such* exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, etc.," * * * as is *now vested* in the Circuit Court, or may be hereafter prescribed by law ! Obviously, it was meant to relegate to the Probate Courts their old jurisdiction, without restriction or qualification. The decis-

ions of this court regarding their former power apply now. Their jurisdiction has been simply elevated from a statutory to a constitutional basis ; being as to limits, unchanged.

The courts of Chancery have no power to take such cases out of the Probate Courts, for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident, mistake, or impending irremediable mischief, is universal ; extending over suitors in all courts, and over the decrees in those courts, obtained by fraud, or rendered under circumstances which render it inequitable that they should be enforced. Hence, any frauds in the settlements of administrators or executors may be corrected. When that is done, if there be still a necessity for continued proceedings in the course of administration, such proceeding should go on in the Probate Court, upon the basis of the reformed settlement. The object of Chancery intervention having been accomplished, the jurisdiction in equity should cease with the necessity. Otherwise, the courts of Chancery might make themselves courts of Probate, in violation of the spirit and intention of the Constitution. If however there be no continuing necessity for a further course of administration ; if the assets be collected in, and the debts be all ascertained, and nothing remains but to fix the liabilities of administrators, executors and their sureties, and the rights of creditors, legatees and distributees, and to make adjustment on equitable principles, all that business comes within the more facile and effective operation of the remedial processes peculiar to equity practice. This makes no conflict of jurisdictions, and it is most proper, in such cases, for the Chancery Court to retain the cause for completion.

As for the sureties of an administrator or guardian, it is true that they cannot be sued at law, upon the bond, until the liability of the principal has been fixed, and there has been a breach of its conditions. Courts of equity have a wider regard for

the interests of those who may be affected by their decrees; and their power of adjustment render multiplicity of issues regarding the same subject matter, much less objectionable than at law. Sureties have a very material interest in the determination of the liabilities of their principals; and it concerns that complete and effective disposition and adjustment of all rights, at once and forever, which courts of equity are emulous of attaining, that the sureties should have day in court, and be bound by decrees, which may and should be so moulded as to protect their rights of exoneration, so far as may consist with the rights of the parties secured.

In this view it has been, heretofore, held by this court that the sureties of an administrator are proper parties to a bill to correct fraud in his accounts; not only that they may be heard in a matter which may affect them ultimately, but for the purpose of subjecting them to the direct operation of the decree to be rendered. *Clark, ad.*, v. *Skelton*, 16 Ark., 474; *Moren et al.* v. *McCown et al.*, 23 Ark., 93; *Osborn et al* v. *Graham, ad.*, 30 Ark., 66; *Jacks* v. *Adair*, 31 Ark., 616.

The answer of the executor admits some of the errors charged as fraudulent, and endeavors to excuse them on the ground of inadvertence and mistake. As for the rest, it may suffice to say, that it consists of explanations going to show that no fraud was intended, but that manifest errors being corrected, the settlement should be confirmed as proper and just. A detail of the charges and explanations would be more prolix than useful to the profession.

The Chancellor, upon the hearing, found the administrator amenable to the charge of fraud in the following respects:

1. In failing to charge himself in any settlement with sixty dollars received by him in currency for the estate.

2. In taking credit, in his settlements, for interest in his disbursements at the rate of ten per cent per annum.

3. In taking credit for excessive commissions.

4. In failing to charge himself with a large amount of rents collected.

5. And because of other errors and mistakes appearing in his settlements.

It was, therefore, ordered that all the settlements of the executor should be set aside and held for naught, and that the accounts should be re-stated. The matter was referred, for this purpose, to a master, with directions to charge the executor with the amount of all assets which came to his hands, and to credit him with all payments legally made, and all unavoidable losses, if any; and, also, with all reasonable attorneys' fees, and with the maximum rate of commissions allowed by law. In stating the account the master was directed to use the pleadings and papers on file in this cause and in the Probate Court, giving them such value as evidence as the law, or the admissions of parties attached thereto. He was further empowered to examine the parties and such witnesses and papers as might be produced before him. He was also to ascertain and state what amount of gold the executor had received as assets, what he had paid out to the legatees, and whether he had used any part for himself, and at what time; and, *if he had*, to charge him with the premium at the time. He was further directed to state an account of the sums which had been paid to the legatees.

In accordance with this order, to which defendant at the time excepted, the master proceeded to state the whole account *de novo*, from the time of the testator's death, reforming it in all respects, according to his views of the law and the weight of evidence, as well as with regard to matters not found by the court to be fraudulent as with regard to those that were. This appears from the report itself and the exceptions on both sides. Of these, six, taken by the defendant, were overruled.

The first four were for the exclusion of allowances made by the Probate Court and refused by the master upon matters not embraced in the findings of the court as fraudulent. Two more were on account of charges of interest made by the master when no fraud at all had been found by the court on failure to charge any interest whatever. The fraud was found in the credit of interest on sums disbursed. A decree was rendered, save as to some exceptions sustained, in accordance with the master's report, against the executor and his sureties, *in solido*, for the amount found in his hands, and in favor of the several complainants respectively for the proportion coming to each. The defendants appealed.

The first question for this court arises on the decree and order of reference. Upon a review of the evidence, we think the Chancellor was justified thereby in reaching the conclusion that the settlements should be held fraudulent, and the accounts re-stated. The executor was shown to be a man of unblemished honor and high character for integrity, and it is easily conceivable that he entertained no actual purpose of defrauding the estate. Perhaps no one circumstance would be sufficient of itself, to warrant the interference of a court of equity. Mere error or irregularity in matters within the jurisdiction of the Probate Court, not tinged with actual *mala fides*, ought to be corrected only on appeal. The same may be said of excessive allowances for commission and attorneys' fees, or any other illegal credits. If made by the Probate Court, upon a fair consideration of all the circumstances, with full knowledge of the facts, and without concealment or improper practice on the part of the executor, they become the judgments of a court having jurisdiction, and are simply erroneous, voidable on appeal, not fraudulent and void; and so with regard to mistakes and omissions. They may be the result of accident, consistent with good faith. But in this case there was a com-

Reinhardt, Adm'r. vs. Gartrell.

bination of acts, omissions, irregularities and erroneous allow-
ances, sufficient, altogether, to satisfy the mind that if fraud
had not been really intended, there had, at least, been such
gross carelessness and reckless disregard of the rights of others
as to make the inference of fraud necessary to the purposes of
justice. The court did not err in re-opening the settlement of
the accounts. The question is, whether it went too far in its
directions for the purpose? ought the re-statement to have
been confined to the matters adjudged fraudulent? or was it
proper to open the whole matter *de novo*, to embrace the action
of the executor during a period of more than ten yeaas, with-
out any regard to the matters adjudged by the Probate Court?

The principles applied in the re-statement of accounts on
account of fraud, as derived from the authorities, are thus
classed by JUSTICE STORY in his Equity Jurisprudence, Sec.
5231 : "In some cases, as of gross fraud, or gross mistake, or
" undue advantage, or imposition made palpable to the court,
" it will direct the whole account to be opened and taken *de*
" *novo*. In other cases, where the mistake, or omission, or
" inaccuracy, or fraud, or imposition is not shown to affect or
" stain all the items of the transaction, the court will content
" itself with a more moderate exercise of its authority. It
" will allow the account to stand, with liberty to the plaintiff
" to surcharge and falsify it, the effect of which is to leave the
" account in full force and vigor, as a stated account, except
" so far as it can be impugned by the opposing party, *who has*
" *the burden of proof* on him to establish errors and mistakes.
" Sometimes a still more moderate course is adopted, and the
" account is simply open to contestation as to one or more
" items, which are specially set forth in the bill of the plaintiff
" as being erroneous or unjustifiable ; and in all other respects.
" it is treated as a conclusion."

These rules apply to accounts stated between parties, and

not with the same latitude to accounts settled and adjudicated by courts of peculiar and exclusive jurisdiction. With regard to the latter class, and in view of the constitutional dignity of our courts of Probate, there are high considerations of public policy, which require that the interference of courts of Chancery should be restricted to and limited by the necessities of each particular case. Their powers should be invoked for the particular occasion, and invoked only for correction. The exclusive jurisdiction of courts of Probate would fall speedily into contempt, if the discovery of a few errors of a fraudulent nature could be made the ground in chancery of sweeping away all that has been properly adjudicated, taking control of the whole subject matter as upon appeal, and hearing, *de novo*, and overruling the decisions of the Probate Court with regard to matters concerning which no fraud was alleged, and upon which parties may, for years, have rested.

It is a difficult and delicate duty to lay down the boundaries of chancery jurisdiction, in its overlapping extension into fields peculiar to other tribunals. It may be safe, in general, to say that it should not exceed the necessity for the correction of fraud, accident and mistake, and for the prevention of irremediable mischief.

Whilst, on the one hand, the courts of Chancery should be jealous of the rights of children, widows, relations and creditors, and should take care that frauds upon them should not be sheltered by the exclusive jurisdiction of the Probate Courts, it must be remembered on the other hand that the proceedings in such courts are not generally technical, nor always conducted under skillful professional advice. Substantial justice may be done, often in a rude and informal way, and administrators and executors may be men not used to preserving records and memoranda of their transactions. One may conceive a very lamentable state of confusion and injustice, which might

arise in the case of old administrations, if, upon the discovery of some erroneous items, infected by fraud, the administrator or executor should be put to the proof again, in a different tribunal, of every matter connected with the administration, and made to sustain the *onus*, after witnesses may have died or been removed, or documentary evidence been lost.

We think the Chancellor should have found the particular points in which the fraud consisted, and have confined the reference to the correction of the settlements as to those points where the errors originally occurred, and where they entered into subsequent statements, and this finding should, itself, be always upon the allegations of the bill pointing out the fraud, and not upon vague and general charges. General assertions of fraudulent intent add nothing to the strength of a bill, unless made applicable to specific acts or declarations. The onus of establishing the errors and mistakes should be upon those alleging the fraud; and in all other respects the settlements of the Probate Court should be allowed to stand as conclusive. This rule, as we have seen, is often applied to accounts settled between parties, and should, for much stronger and more obvious reasons, be applied to constitutional courts of exclusive jurisdiction.

It was not sufficient for the Chancellor to add that the accounts and settlements were fraudulent because of other errors and mistakes. They should have been specified, and the reference confined to them, and the accounts, as they might be affected by them. We are satisfied that this is the only safe rule of practice, without which all the better and more competent class of men will shrink from the administration of estates, and those interested in estates will be encouraged to neglect the proper vigilance over their interests in the Probate Courts, in the hope of an entire new hearing at some future day in a court of Chancery. There are many cases in

which the protection extended to the interests of children and married women, must, of necessity, be adjusted in accordance with a high public policy.   If any evils are to be apprehended from the supineness of guardians, husbands, relations and friends, and in concluding them by the action of the Probate Courts, the remedy must be sought by greater care on the part of the people to fill those tribunals with a class of judges whose ability, industry and integrity will justify the important trust reposed in them by the Constitution; and the respect which this court is constrained to pay them as judges of constitutional courts of record.

It is unnecessary to consider the master's report and the exceptions.   It was error in the court to annul the whole action of the Probate Court, and to order a new account from the beginning.   The matters into which the elements of fraud entered should have been specified, and the reference confined to a re-statement of the accounts so far as they might be affected thereby,  leaving them to stand  in other respects as *res judicata*.   Upon striking the balance it will be proper to ascertain the proportion belonging to each legatee, and to render a decree accordingly.

For the error of the Chancellor in setting aside and holding for naught the entire settlements in the Probate Court, and in referring the whole matter of the administration to a master for a re-statement, and in failing to specify more particularly the matters of fraud to be corrected, the decree must be reversed, and the cause will be remanded with directions to re-hear the cause, and for such other proceedings as may be in accordance with law and this opinion.