## JOSEPH W. HEADY et al., Appellants, v. ZUNO CROUSE et al.

**In Banc, March 30, 1907.**

1. **REAL ESTATE: Sale of Minor's Interests: Jurisdiction.** A will devised land to a wife and the heirs of her body. A statute then in force authorized the circuit court to order a sale of a minor's real estate for investment in stocks and other real estate when it should appear to the court "after full examination upon the oath of disinterested and credible witnesses" to be for the benefit of the minor so to do, upon the petition of the infant's guardian and curator setting forth the facts deemed sufficient to render the sale desirable and necessary. The husband and wife as plaintiffs asked for a sale of the land of their six children, five of whom were minors, and the reinvestment of the proceeds in other land, the husband being appointed commissioner by the decree to make the sale. It does not appear from the decree that any necessity for the sale was suggested, nor any apprehension of imminent destruction of title or property, or that it was necessary for the support or maintenance of the minors, but the decree rests solely on the foundation that it would conduce to the interest of the minors to sell the land and reinvest the proceeds in other lands. *Held*, that the court had no jurisdiction, under the statute, to order the sale.

2. ——: ——: **General Equity Jurisdiction.** Nor did the circuit court by virtue of its general equity jurisdiction have authority to decree a sale of the minors' land for the mere purpose of reinvesting the proceeds. The jurisdiction of a court of equity to decree the sale of a minor's real estate must be built on something more substantial than a hope that a sale and reinvestment may result in financial advantage to the minor.

3. ——: ——: ——: **Statute.** Courts of equity have original jurisdiction over the estates of minors, but conceding that jurisdiction for certain equitable purposes does not concede jurisdiction to do any and every thing whatsoever with the minor's estate, simply because he is a minor. The act to be valid must be based on some equitable principle. If the jurisdiction to sell the lands of infants for the mere purpose of investing in other property ever existed in chancery, there is no necessity for its exercise in Missouri, because for more than forty years power to do that is given by statute, under safeguards in the statute prescribed, and is now vested in the probate court.

4. ————: To Jane and Heirs of Her Body: Child's Death Leaving Children. Where by will land was devised to ·Jane and the heirs of her body, and children were born to Jane, and afterwards the land was sold in pursuance to a decree of court brought by Jane and her husband against the children, and afterwards the children died before Jane, leaving children of their own born after the decree, the decree and the sale of the land thereunder did not affect the title of the grandchildren. Jane's children, who died before she did were not her heirs; until her death their interests were contingent, and as they died first no title ever vested in them.    The interests that would have gone to her children had they survived Jane, at her death became vested in the descendants of such deceased children, and hence the sale did not affect those descendants.

5. ————: ————: Ratification. Where the decree of the court made without jurisdiction created a lien on the land of the commissioner (their father) in favor of the minors whose real estate he was authorized to sell, to secure them in the purchase money, and he in after years divided all the land owned by him among them, giving them deeds of gift therefor, the acceptance of those deeds by the children will not be held to be a ratification of the sale of their lands, there being nothing in the deeds to indicate that they were given to compensate them for their interest in the lands sold by him.

Appeal from Lincoln Circuit Court.—*Hon. H. W. Johnson,* Judge.

REVERSED AND REMANDED.

*Norton, Avery & Young* and *Frank W. Howell* for appellants.

(1) The estate conveyed by the will was a life estate to the wife, with a contingent remainder to the heirs of her body. Godman v. Simmons, 113 Mo. 122; Emerson v. Hughes, 110 Mo. 627. (2) The heirs of the body of a tenant for life are not ascertainable until the death of the life tenant. R. S. 1899, sec. 4594; Emerson v. Hughes, 110 Mo. 627. (3) While a contingent remainder is not a vested interest, yet it is such an interest under our statute as can be alienated. Reinders v. Koppleman, 68 Mo. 432; Lackland v. Nevins, 3 Mo. App. 535. But if those, while the life tenant is living,

who are the apparent heirs of the body alienate their interests and die before the termination of the life estate, the grantees will take nothing. Godman v. Simmons, 113 Mo. 132. (4) The circuit court of Lincoln county had no jurisdiction or authority, shown under the evidence, to make the decree in 1871, introduced in evidence, and therefore the deed of Joseph M. Heady, as special commissioner, to Rasbach, trustee for the "Eleven," made in 1878, conveyed no title, was void, being made under a void decree, and could be attacked collaterally. Losey v. Stanley, 147 N. Y. 567; Taylor v. Phillips, 2 Ves. 23; Calvert v. Godfrey, 6 Beav. 97; Jackson v. Talbot, 21 Chan. 786; Baker v. Lorilard, 4 N. Y. 257; Williams v. Berry, 49 U. S. 556; Voules v. Buckman, 6 Dana (Ky.) 466; Faukner v. Davis, 18 Gratt. (Va.) 651; Messner v. Giddings, 65 Tex. 301; Walker v. Snysor, 80 Ky. 620; Dodge v. Stevens, 105 N. Y. 585; Barton, Ch. Pr. sec. 170; Bispham, Eq., sec. 549; Pomeroy, Eq. Jur., sec. 1309; Tyler on Infancy, 296; 3 Wait's Act. and Def., 555; Kearney v. Vaughn, 50 Mo. 284; Stevens v. De la Vaulx, 166 Mo. 20. (5) Under the decisions of our own court, as none of the Heady children could, by any act of theirs, have conveyed their interests in the land so that it would have bound the heirs of the body of Mrs. Heady, which were ascertainable at the time of her death, were it to develop that the apparent heirs conveying were not really heirs of the body of Mrs. Heady, as was the case with Mary B. and Laura M., they dying before their mother, the life tenant, then certainly it cannot be contended that any court, by its decree, could convey a greater interest than the parties to the suit had, and that this decree would not bind the children of Mary B. and Laura M., who were the bodily heirs of Mrs. Heady at the time of her death. Emerson v. Hughes, supra; Godman v. Simmons, supra.

*James A. Seddon* and *McPheeters & Harris* for respondents.

The decree may be and is supported under the original jurisdiction of the circuit court of Lincoln county as a court of chancery. Under this jurisdiction, independent of any statute, that court certainly had jurisdiction of the general subject-matter of infants' estates—indeed, infants are the special wards of chancery, and peculiarly under their protection, and no part of the jurisdiction of such courts is more important or beneficial. It is generally thought that this jurisdiction belonged to and was exercised by the English Court of Chancery from its first establishment, and that it was originally assumed by the chancellor as representing the sovereign in his capacity as *parens patriae*. In other words, the court of chancery, in the exercise of this jurisdiction, acted under a delegated authority from the sovereign, who, as *parens patriae*, had jurisdiction over the persons and estates of infants in very contemplation of their legal incapacity to act for themselves. Eyree v. Countess of Shaftsbury, 2 P. Wms. 118; Wellsley v. Duke of Beaufort, 2 Russ. 20; Wellsley v. Wellsley, 2 Bligh N. S. 124; De Manneville v. De Manneville, 10 Ves. 63; Ex parte Phillips, 19 Id. 118; 3 Bla. Com. 427; Story Eqr. Jur., secs. 1328, 1333; Witter v. Witter, 3 P. Wms. 101; Pierson v. Shore, 1 Atk. 480; Ashburton v. Ashburton, 6 Vesey 6; Inwood v. Twyne, Amb. Rep. 419. The reasons which lead to the distinction in England between the jurisdiction of chancery over the personal estate and the real estate of infants, causing courts of chancery to be more reluctant with regard to decreeing the sale of the latter, are very ably set forth by Judge MULKEY in the opinion in Dodge v. Cole, 97 Ill. 338, and by Judge BRICKELL in Goodman v. Winter, 64 Ala. 410; Huger v. Huger, 3 Des. 21; Spencer v. Bank, Bailey's Eq. (S. C.) 468; Hale v. Hale, 146 Ill. 227; Hunt v. Long, 90

Tenn. 445. While a few of our American courts have announced that chancery jurisdiction does not extend to decreeing a sale of infants' lands, yet in the majority of cases where the question has been squarely presented our courts have upheld the jurisdiction, especially where the question has been carefully discussed. Very learned discussions will be found in Dodge v. Cole, 97 Ill. 338. We also invite the court's attention to the following decisions, as sustaining the proposition for which we contend: Thorington v. Thorington, 82 Ala. 489; Ex parte Jewette, 16 Ala. 409; Goodman v. Winter, 64 Ala. 410; Gassenheimer v. Gassenheimer, 108 Ala. 651; Rivers v. Durr, 46 Ala. 418; Bulow v. Buckner, 1 Rich. Eq. Cases 401; Bulow v. Witte, 3 S. C. 308; Huger v. Huger, 3 Desaus (S. C.) 21; Spencer v. Bank, Bailey's Eq. (S. C.) 468; Clifford v. Clifford, 1 Desaus (S. C.) 115; Stapleton v. Langstaff, 3 Desaus (S. C.) 22; Shumard v. Phillips, 53 Ark. 37; Snowhill v. Snowhill, 3 N. J. Eq. 20; Thompson v. Mebane, 4 Heisk. (Tenn.) 370; Hunt v. Long, 90 Tenn. 445; Case of G. C. Brown, 8 Humph. (Tenn.) 200; Jones v. Sharp, 56 Tenn. (9 Heisk.) 660; Harris v. Richardson, 4 Dev. (N. C.) 279; Williams v. Harrington, 33 N. C. 616; Smith v. Sackett, 10 Ill. 534; Allman v. Taylor, 101 Ill. 185; Ames v. Ames, 148 Ill. 322; Hartman v. Hartman, 59 Ill. 103; Lynch v. Rotan, 39 Ill. 14; Dorsey v. Gilbert, 11 Gill & J. (Md.) 87; Downin v. Sprecher, 35 Md. 475; Taylor v. Peabody Heights, 65 Md. 388; Johns v. Smith, 56 Miss. 727; Sharp v. Findley, 59 Ga. 722; Thomason v. Phillips, 73 Ga. 140; Overby v. Hart, 68 Ga. 493; Dampier v. McCall, 78 Ga. 607; Wood v. Mather, 38 Barb. (N. Y.) 482; In re Salisbury, 3 John. C. 347 (By Chancellor Kent); Anderson v. Anderson, 44 N. Y. 249. See also: Story on Eq. Juris., 1059, 1060 and 1357; 2 Kent's Commentaries, 230; 1 Fonblanque's Eq., ch. 11, sec. 5, note f. We have, after a diligent examination of the authorities to the contrary, not been able

to find one, either among the judicial decisions or the text-writers, where it has been attempted to base a contrary decision upon any independent reason—they have been merely a blind following of English decisions, without observing that the English decisions were founded on substantial reasons which do not exist in this county. The first instance of this question in Missouri was in the case of Kearney v. Vaughn, 50 Mo. 284. There plaintiff's title depended upon the validity of a decree of the Court of Common Pleas in 1859, ordering the sale of property of certain minors. The court there leaves the question undecided as to whether chancery jurisdiction extends to decreeing a sale of infant's lands, but with a decided tendency towards supporting the jurisdiction. We submit, however, that in sustaining plaintiff's title the court necessarily held that the court which rendered the decree had the jurisdiction so to do, for if it was lacking in jurisdiction its decree would be a nullity, just as though it had never been rendered, and would neither be a bar to the minors or to strangers. We also call the court's attention to Wood v. Boots, 60 Mo. 546; Castleman v. Relfe, 50 Mo. 583; Hamer v. Cook, 118 Mo. 476.

*Norton, Avery & Young, Frank Howell* and *Barclay, Shields & Fauntleroy* for appellants in reply.

(1) To respondents' claim that the "decree" may be "supported under the original jurisdiction of the circuit court of Lincoln county as a court of chancery" we reply, first, that it is a grave error to suppose that any general or inherent power exists in courts of chancery (independent of statute) to sell the land of infants for reinvestment. Rogers v. Dill, 6 Hill 416; Pierce, Admr. v. Trigg's Heirs, 10 Leigh 419; Bent v. Railroad, 3 Pac. 721; Onderdonk v. Mott, 34 Barb. 106; Adams, Equity, 285; Schouler, Dom. Rel. (5 Ed.), sec. 356; Whitehead v. Bradley, 13 S. E. 196; Bispham,

Equity (6 Ed.), sec. 529; Garmston v. Gaunt, 1 Colly 577. The Code of Procedure does not enlarge the jurisdiction of equity. Carrico v. Tomlinson, 17 Mo. 501. (2) We reply, secondly, that even if such general power existed in chancery, it would not include power to sell and dispose of contingent interests in remainder of the minors in this case under the Shelton will. Stewart v. Griffith, 33 Mo. 24; Lomax v. Lomax, 11 Vesey 48; Wilson v. Fisher, 172 Mo. 10; Errat v. Barlow, 14 Vesey 202; Putnam v. Story, 132 Mass. 205; Roundtree v. Roundtree, 26 S. C. 450. (3) We reply, thirdly, that a long course of legislation in Missouri, *in pari materia,* discloses uniform legislative intention and expression contrary to the theory that such inherent jurisdiction in equity existed, for if such theory were correct, the hundreds of special acts enacted to authorize the sale of infants' lands would have been useless and unnecessary. The fact of their enactment demonstrates the legislative negation of any such inherent power in our courts of equity as respondents assert. (4) We reply to the claim of jurisdiction in this case that jurisdiction to support a decree or judgment is wanting where the court has not power to deal with cases of the general class in question, or where the decree is beyond or in excess of the authority of the court in a case of that class. Wilson v. Lubke, 176 Mo. 217; Story, Eq. Pl. (8 Ed.), sec. 10; Williamson v. Berry, 8 How. 542; Shriver's case, 2 How. 43; State ex rel. v. Guinotte, 156 Mo. 527; State ex rel. v. Elkin, 130 Mo. 90. Passing beyond the line of jurisdiction renders supposed judicial action void both at law and in equity. Ex parte Lange, 18 Wall. 175; Thompson v. Whitman, 18 Wall. 468.

VALLIANT, J.—Ejectment for certain land in Lincoln county. Charles M. Shelton was the common source of title; he died in 1848, leaving a wife but no

child, and leaving also a will by which he devised the land in question to his wife Jane S. Shelton for life, remainder to the "heirs of her body." After the death of the testator his widow married Joseph M. Heady by whom she had six children, Mary, Charles, Laura, Sarah, Annie and Joseph W. Mary married John Carson and died before her mother, leaving two children, who are plaintiffs in this suit; Laura married Hawley Chappel and died before her mother, leaving three children, who are also plaintiffs. Jane, the widow of Charles M. Shelton, afterwards the wife of Joseph M. Heady, died in 1900; the plaintiffs are the surviving children and grandchildren above mentioned, and are the only heirs of her body. Plaintiffs claim title under the will of Charles M. Shelton.

Defendants claim title through a sale of the land made under a decree of the circuit court of Lincoln county in 1871. The pleadings in that case were not in evidence and it is said in the brief of counsel that they were lost and therefore could not be produced, but the decree was in evidence and from it the following appears: The plaintiffs were Joseph M. Heady and Jane his wife, and the defendants were their above-named children, all of whom were then living and all of whom were minors except Mary. The decree recites that all the defendants were personally served with process, that Mary appeared by her attorney and the minors by their guardian *ad litem*. The court, after first finding that the land (describing it) belonged to Shelton in his lifetime and was by his will devised to his wife for life, remainder to the heirs of her body, then finds "that it will conduce to the interest of the defendants, who are the heirs of the body of the said Jane S. Shelton, now Jane S. Heady, to sell the said real estate and to invest it in other real estate more productive and beneficial to said defendants." Then the decree goes on to recite that the court finds that

Joseph M. Heady owns certain other land in that county, describing it; thereupon it was decreed that Joseph M. Heady be appointed commissioner to sell the Shelton land for not less than $10,000, and for the purpose of securing to the defendants the payment of the purchase money it was decreed to be a lien in their favor on the land owned by Heady, at least that is what respondents think it means, but if so there is a mistake in the description. The date of the decree is March 28, 1871.

Defendants' next offer was a deed from Joseph M. Heady, the commissioner, under the decree conveying the land to David H. Rashback, trustee, reciting that it was sold for $10,007.46, and that Rashback had on the day of the date of the deed paid the commissioner $6,000, the balance due on the sale. The deed was dated September 20, 1878, more than seven years after the date of the decree. There was no report of the sale to the court for confirmation, but the deed was acknowledged in open court on the date last-named. After this came other deeds purporting to bring the title, except as to an undivided one-eleventh, down to the defendants. The judgment was for the defendants and plaintiffs appealed.

I. When the decree was offered there were some objections interposed, chief among which was its alleged invalidity for lack of jurisdiction in the court, and also because it appeared on its face to have been altered by erasure and interlineation.

The question of jurisdiction in the circuit court in 1871 to render the decree is the first serious question in the case.

At the date of the rendition of this decree there was a statute which authorized the circuit court to order a sale of a minor's real estate for investment in stocks or other real estate when it should appear to the court to be for the benefit of the minor to do so. [G.

S. 1865, p. 470 secs. 34, 35.] The procedure there prescribed was that the guardian or curator of the infant should petition the circuit court setting forth the condition of the estate and the facts and circumstances which were deemed to render such a proceeding desirable or necessary, whereupon the court should investigate the matter and "if after full examination on the oath of disinterested and credible witnesses" the court should find that it would be to the interest of the ward, it might make the order, first, however, requiring the guardian or curator to give bond and security for the faithful discharge of the duty and to account for the proceeds of the sale.

The same is substantially the statute law of the State now, except that the jurisdiction is now lodged in the probate court instead of the circuit court. [R. S. 1899, secs. 3510, 3511.]

It is conceded that the circuit court in making the decree now in question did not proceed under those statutory provisions, but was assuming to act under its general jurisdiction as a court of equity, and the contention of respondents is that the authority for the decree is found alone in the body of equity jurisprudence.

Since the pleadings in the case are not in evidence we can only ascertain what they contained as their contents are reflected in the decree. By the decree we learn that the life tenant and her husband were the plaintiffs and that her children, the prospective contingent remaindermen, were the defendants. The decree starts out with the recital that process was duly served on all the defendants, that a guardian *ad litem* was appointed by the court for the minors and they all appeared, and all the issues were duly submitted to the court. Then, as if in response to those issues, the court finds that by the will of Shelton the plaintiff Jane took a life estate in the land, and the heirs of her body

the remainder, that the defendants were the heirs of her body and that it would be to the interest of the defendants to sell the land and invest the proceeds in other real estate. Upon those findings the decree was made, to sell the land and secure the proceeds by lien on other lands. There was no order to reinvest.

From this it appears there was no necessity suggested for the sale of the land, no apprehension of imminent destruction of title or loss of the property, not even a necessity for its sale for the support and maintenance of the children, but the decree rests solely on the foundation that it would conduce to the interest of the defendants to sell this land and invest the proceeds in other land—a mere business speculation. If the decree can be upheld it must be so on the ground that at that time the circuit court by virtue of its general equity jurisdiction had authority to appoint a commissioner and clothe him with power to enter into such a business speculation with the infants' real estate in the hope and for the sole purpose of bettering the infants' financial condition. There are some authorities in this country that hold that a court of equity may do that, but the weight of authority is to the contrary and we think reason and judicial prudence are against the recognition of such a power.

Counsel on both sides have referred us to some Missouri cases bearing on the subject.

In Kearney v. Vaughan, 50 Mo. 284, plaintiffs derived title through a sale of real estate of minors under a decree of a court of common pleas; this court held that, as against the defendants in Kearney v. Vaughan, who were strangers to the record in the case wherein the decree was rendered, the decree was valid. But the minors whose land was ordered to be sold under that decree were not parties to the suit of Kearney v. Vaughan, and their right to question the validity of the decree was not involved. The court after saying that

the proceeding under which the decree was rendered
for the sale of the land was not a proceeding under the
statute, said: "Under some circumstances, however,
it has been held that a court of equity will order the
sale of the real estate of minors, though it is not supposed that the general power exists independently of
the statute. If this were a proceeding by the heirs to
recover their property notwithstanding the sale, it
would be necessary to scrutinize it, to examine the authority of the court to order it, and to see whether it
could be sustained. But the defendants have no interest in that question; the heirs are not contesting, they
are not made parties, and may be satisfied with the sale
and be willing to abide by it."

Castleman v. Relfe, 50 Mo. 583, was a suit in equity
by the purchaser at the guardian's sale to set aside the
sale and cancel the purchaser's notes given for the purchase money on the ground that the proceedings in the
circuit court wherein the decree of sale was rendered
were so irregular that no title passed. Those proceedings were in the circuit court, under the statute, by the
guardian for the sale of his ward's land, and there were
some irregularities in the proceeding, among which
was the fact that the sale had not been reported to
and confirmed by the court, but it was held that
although in a like proceeding in the probate court a
report of the sale and confirmation thereof was necessary, since that was a court of limited jurisdiction, yet
such was not necessary in the same kind of a proceeding in the circuit court because the latter was a court of
general jurisdiction. In that connection the court used
this language: "The circuit court is a court of general
jurisdiction, and when it has acquired jurisdiction, however erroneous or irregular its proceedings may be,
they are regarded as valid and binding until they have
been reversed or annulled by suitable proceedings in-

stituted for that purpose and titles acquired by sales under them will be protected.''

The language just quoted does not mean that every sale ordered by the circuit court because it is a court of general jurisdiction will be upheld until the judgment is reversed or annulled by suitable proceedings instituted for that purpose; it means that the judgment will be so upheld provided the jurisdiction of the court appears. In that case the court was proceeding to exercise the particular jurisdiction the statute had conferred and the validity of the judgment was assailed, not on the ground of want of jurisdiction, but of irregularity in the proceeding. In the case at bar the jurisdiction of the court over the subject is assailed.

In Woods v. Boots, 60 Mo. 546, this language occurs: ''The power of ordering a guardian or curator to sell lands of the wards and invest the funds existed originally in the circuit court as a court of chancery.'' That language must be interpreted in the light of the context and in view of the subject to which it was applied. The court was not speaking of original equity jurisdiction, but of the jurisdiction originally conferred on the circuit court by this statute which we have been discussing, which was originally enacted in 1861 and was afterwards, in 1866, amended to confer the same jurisdiction, concurrently, on the probate courts of certain counties. The subject the court was considering was an order of the probate court authorizing a guardian to invest certain money belonging to his ward in certain real estate and it was claimed that the order was authorized by that statute. This court held that the statute did not authorize the order and that the guardian was liable for the money so invested as for a misappropriation. Whilst that case treats only of jurisdiction conferred by statute and is therefore no authority on the question of equity jurisdiction, the facts serve to illustrate the unwisdom and danger of such a juris-

diction as is now claimed. There the probate court had solemnly found it to be to the interest of the ward and therefore ordered the guardian to invest the ward's money in the land, which the guardian did, leaving a balance of the purchase money unpaid and a lien for its payment on the land so purchased; when the debt came due the ward was without means and the vendor could have his land back again and keep all the ward's money besides. The probate judge in that case was doubtless as conscientious and honest in his belief that he was acting for the best interest of the infant and as careful in guarding that interest, as the chancellor was in the case at bar, or as chancellors generally are when those whom they suppose have the interest of the minor most at heart apply for leave to sell and reinvest in any flattering scheme.

In Hamer v. Cook, 118 Mo. 476, is found this language and defendants quote it as sustaining their side of the question: "Again, it is the practice of the court of chancery to permit guardians, under the direction of those courts, to convert real property into personalty, and personalty in realty." That language was not there used to express the decision of the court upon any point in the case, because, as we will see by reference to the whole opinion, the decree then under review was based on what the trial court had construed to be a devise of land in trust for a particular purpose and the order of sale was to carry that purpose into effect, and the point decided by this court was that the circuit court had jurisdiction to construe that will and if it created a trust to enforce the trust, that such a decree, though it may have been based on an erroneous interpretation of the will, was yet within the jurisdiction of a court of equity and therefore not subject to a collateral attack. The decree, the validity of which was assailed in that case, was rendered in the circuit court of

DeKalb county and rested on the following facts: Lewis Hamer owning certain land died leaving a widow and children and leaving also a will devising and bequeathing all his estate real and personal to his wife for life for her support and maintenance and to raise, support, maintain and educate his children and at her death what was left was to go to his children. The widow married again and afterwards she and her husband filed suit in the circuit court against the children, some of whom were minors, praying for authority to sell the land for the purpose of carrying out the provisions of the will. It was alleged in the petition that there was no personal property then remaining, that but a small portion of the real estate was improved, yielding not more than sufficient to pay taxes and leaving nothing for their support, "that the intention of the testator and the purpose of said will, as expressed in the same, cannot be carried out and effectuated without a sale of the real estate." On that showing the decree of sale was made, and it was in reference to the question of the jurisdiction of the court to render that decree that the language quoted was used. The parties assailing that decree contended that under the statute the county court alone had power to sell the land for the education of the minors, but this court held that it was a suit to obtain for the trustee authority to sell the land to yield the fund to carry out the purpose of the will and in that connection the court, per GANTT, P. J., said: "It was a part of the ancient and well-defined jurisdiction of the courts of chancery to construe wills and declare the limitations of trusts created thereby, and the creation of our county and probate courts has not divested them of this power. [Church v. Robertson, 71 Mo. 326.] And it is a familiar rule that a court of equity will never permit a trust to fail merely for the want of a trustee, and if no other trustee is designated, the courts of equity will take upon themselves the ex-

ecution of the trust.   [Bank v. Chambers, 96 Mo.
459.]'' Then in immediate connection follows the language first above quoted, after which the court said:
''Under the allegations of the petition, then, the circuit
court of DeKalb county was asked as a court of equity
to construe a will, declare a trust, and enforce it by a
sale of those lands.'' That decision therefore bottoms
itself. on a ground of equity jurisdiction independent
of the ground on which it is sought by defendants in
the case at bar to rest the jurisdiction of the circuit
court of Lincoln county to render the decree which
these plaintiffs now assail.

We find nothing in our decisions to sustain the
position of defendants on this question.

There is nothing in the character of this subject
that especially distinguishes it as a creature of equity.
That which we technically call equity, in contrast with
what we technically call law, was of natural origin and
growth in our jurisprudence, springing up to meet the
imperative demands of justice at places where the law
was inadequate to the occasion. ''Equity follows the
law,'' it does not override or subvert the law, it comes
to the aid of the law when the law, on account of its
rigid cast, is unable to adjust itself to the demands of
justice. Equity sits silent in the courts as long as the
law is able to meet the demands of justice; it is silent to
the call of a mere legal right, its voice is heard only
when a cause, not contrary to law, well founded in right
and justice, would suffer without its aid. It is cold to
a mere legal demand but warm to the prayer of helpless
justice. It aids the law but is not officious in its services, it does not take hold of a case merely because it
has peculiar power.

Now what was there in the nature of the case in
which the circuit court of Lincoln county in 1871 undertook to exercise its power as a court of equity that
especially appealed to equity for aid? What cry of

suffering justice was heard by the chancellor? The case laid before the court by the plaintiffs in that case, stripped of superfluities, was simply this: We the plaintiffs think we can make money for these minors (as well as ourselves) by selling their contingent interest in this land and investing the proceeds in other lands and we ask the aid of a court of equity to enable us to enter into that speculation. It is said in the able brief of the learned counsel for defendants that equity has always exercised jurisdiction over the estates of minors. That is so and nothing we are now saying will deny to courts of equity their original jurisdiction in the case of minors and the protection of their property interest. But equity distinguishes between the shield and the sword; to protect the estate from a danger which the infant, because of his tender years, is unable to defend against, is one thing, to commission some one to go into the field of trade selling and buying on account of the infant is another thing. Courts of equity have original jurisdiction over the estates of minors, but conceding that jurisdiction for certain equitable purposes does not concede jurisdiction to do any and every thing whatsoever with the estate of a minor, *quia minor*—the act to be valid must be based on some equitable principle.

If jurisdiction in chancery to sell the land of infants for the mere purpose of investing in other property ever existed, there is no necessity for its exercise in Missouri, because under the statute above quoted ample power to do that, under the safeguards in the statute itself prescribed, is given. That statute was in force when this decree was rendered in 1871 (Laws 1860-61, p. 98), and is substantially the statute at present except that the jurisdiction is now given to the probate court. [R. S. 1899, sec. 3510.] It is true, as contended by defendants, that the mere creation by statute of a legal remedy where none existed before,

or the mere conference of the same jurisdiction on a court of law, does not take away the jurisdiction in equity unless the statute so declares or so necessarily implies, but the enactment of such a statute without making any reference therein to the jurisdiction of courts of equity and the continuance of the statute for over forty years in our law books, show at least the opinion of the Legislative Department of the Government on the question and obviate the necessity of a judicial resolving of a doubtful question in favor of the jurisdiction of a court of equity, or of establishing now for the first time a precedent in this State for the exercise of such a jurisdiction. If infants were suffering in this State because under the rigid forms of law their guardians could not sell their lands to invest the proceeds in flattering schemes that promise large gains, our courts might search for a precedent in equity to allow them to do so, but as our statute law now is there is and has been for forty years no necessity for such a stretch of judicial power.

In the briefs before us this question of equity jurisdiction is discussed with great learning and ability on both sides, and, if time and space were of no consideration, we would like to follow the counsel and review in this opinion, as we have followed them and reviewed in the library, the authorities which they have respectively arrayed. We must, however, be content to refer the inquirer for learning on this subject to the briefs of the counsel which will be reported with the case and to give, with but little further discussion, our conclusion, viz: that the decided weight of authority both in England and America is against the contention that courts of equity have jurisdiction to decree a sale of a minor's land for the mere purpose of reinvesting the proceeds.

Counsel for defendants seem to concede that the

modern English decisions are against their contention and that at least a large and respectable list of American decisions are also against them, yet they say that those American courts which have so held have simply followed the lead of the English courts without questioning the firmness of the ground on which the English courts rest their decisions and without observing the difference that exists between the two countries in the tenures of real property and the constitutional restrictions on legislation. Those distinctions are referred to also in an able opinion of the Illinois court, Dodge v. Cole, 97 Ill. 338, on which defendants strongly rely. In that case the Illinois court upheld the decree there assailed on the ground that it was within the scope of general equity jurisdiction, yet in the opinion the court, l. c. 355, said: "And it must be confessed that the decided weight of authority establishes the proposition that a court of chancery has no inherent power to decree the sale of lands belonging to lunatics, idiots, infants, or others laboring under disabilities."

We discover no essential difference between the foundation on which the English decisions are rested and that on which the decisions of our courts rest, or any reason why the same principle of equity jurisprudence is not as applicable to the conditions in one country as in the other.

There is, as the learned counsel contend, in our law an absence of that jealousy against alienation of real estate that we observe in the English law. But that jealously applies in England with equal force to the alienation of land held by a person *sui juris* as to that held by an infant. There is no difference, so far as the inalienable feature of the English law which we are now considering is concerned, between land held by a person *sui juris* and land held by a minor; if the inalienable feature exists in the title by which the land is held it affects the one as well as the other. If in

England a minor holds such title to land that, if he were of age, he could sell it, the only reason he cannot sell it there is the same reason that a minor in like case in this country could not sell his land, that is, not because of the spirit of jealously in England against the alienation of real estate, but because he has not reached the age of discretion.

It is also true that in this State and some other States of this Union there are constitutional limitations on the power of the Legislatures to pass special acts to authorize the sale of particular minors' estates, and there is no such restriction on the power of the British Parliament. But our General Assembly is as free as the lawmakers of England to pass a general law to cover all such cases and it has done so in terms as ample as could be conceived.

II. There are other questions discussed in the briefs but in view of the conclusion we have reached on the main question they are of minor importance and need only to be briefly mentioned.

Under the Shelton will the land was devised to the widow for life with remainder to the "heirs of her body"—not the "issue of her body"—as in Tindall v. Tindall, 167 Mo. 218. The widow and her second husband as plaintiffs brought the suit against their children then living; of course she had no heirs at that time because she was living, her children had then only contingent interests depending on outliving their mother, two of them never became her heirs because they died before she did and their children who did become heirs of her body were not born until years after the decree was rendered. These latter were not bound by the decree, even if the others had been, because they derived their title, not by inheritance from their mother in whom no title ever vested, but directly from the will as being heirs of the body of their grandmother.

III.  The decree in question undertook to create a lien upon certain land therein said to be owned by Joseph M. Heady in favor of the children whose land Heady was to sell, to secure them in the purchase money. That was in 1871.  There is no evidence that any effort was ever made by the children to enforce any such lien.  In January, 1886, Joseph M. Heady and wife divided the land owned by him among their children, giving each a deed to his or her share, wherein it was expressed to be a deed of gift made pursuant to their desire to make an equal division of the land among their children.  In March of that year Heady died, his estate was insolvent.  By the acceptance of those deeds, the defendants in their answer say, the children of Heady ratified his act as commissioner in selling their land. We find nothing in the evidence to justify that plea. Heady may at that late day have reached the conclusion that he had wronged his children and that may have been his secret motive for deeding to them his land before his death, but if so it was locked in his own breast, the deeds make no reference to the old transaction and the evidence was that there was nothing said on the subject, that there was no agreement or understanding between the father and the children that these deeds were given to compensate them for their interest in the Shelton land which he had sold.  Whether the children could hold the land as against the creditors of their father's estate was a question between them and the creditors; it is one in which these defendants have no interest.

There are still other questions discussed in the briefs, but in view of the conclusions above stated they are of no importance.

The life tenant died in December, 1900, and the plaintiffs, the remaindermen, brought this suit in February, 1901.

Under the evidence in the case the judgment should have been for the plaintiffs.

The judgment is reversed and the cause remanded to the circuit court of Lincoln county to be retried in accordance with the law as in this opinion expressed.

All concur.