## WATSON v. HENDERSON.

### Opinion delivered February 27, 1911.

GUARDIAN AND WARD—SALE OF WARD'S LAND—JURISDICTION OF EQUITY.—
The act of April 16, 1873, lodged in the circuit court all the jurisdiction that had formerly been possessed by probate courts, and gave to the former court exclusive jurisdiction thereof. The act of April 22, 1873, gave to guardians or curators power to sell the lands of wards for reinvestment. Const. 1874, art. 7, § 34, provides that "the judge of the county court shall be the judge of the court of probate,

and have such exclusive original jurisdiction in matters relative to the probate of wills, the estate of deceased persons, executors, administrators, guardians, persons of unsound mind and their estates as is now vested in the circuit court or may be hereafter prescribed by law." *Held,* that equity has no jurisdiction to order the sale of a minor's land for reinvestment, though it has jurisdiction to prevent waste of a minor's estate.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; reversed.

### STATEMENT BY THE COURT.

L. H. Watson died in 1891, owning and occupying as his homestead the northeast quarter of the southeast quarter of section 13, township 4 north, range 3 west, in Monroe County, Arkansas. Mrs. Delia Watson, the widow of L. H. Watson and appellant, who was the minor son of L. H. and Mrs. Delia Watson, continued to reside on the land, or rented it, until 1899. The land was of the value of about $2,000, and rented for $200 per year.

In 1899 Mrs. Delia Watson (then Mrs. Simpson) and appellant, by his guardian, petitioned the chancery court of Monroe County for a sale of the land, setting up that "the land was without fencing or buildings, that they could no longer cultivate it, and that it ought to be sold and the proceeds invested in a home for them." The court granted their petition, and ordered the land sold at private sale by the guardian for the sum of $600. The land was sold to appellee, deeds were executed by Mrs. Simpson, and by the guardian of appellant. The sale as thus made was afterwards confirmed by the chancery court. Appellant became of age April 13, 1908, and on October 5, 1908, filed a bill of review, in which he alleged substantially the above facts, and further that the appellee was in possession of the land, and had been since 1899, enjoying the rents and profits amounting to $1,600. He further alleged the sum of $1,600 was sufficient to reimburse appellee his purchase money with interest and for all the improvements he had made, and taxes and interest. He averred that if, upon accounting, it should be shown that the annual rents were insufficient to fully reimburse appellee then appellant was ready to pay such additional sum as might be necessary. He prayed that the decree be set aside, and that the deed made by the former

guardian be set aside as a cloud upon appellant's title, and that appellant be given possession of his property.

Appellee demurred to the bill. The court sustained the demurrer, and dismissed the cause. Appellant duly prosecutes this appeal.

*N. W..Norton* and *C. F. Greenlee,* for appellant.

The chancery court was without jurisdiction to order a sale of a minor's property for reinvestment, because that power is expressly and exclusively given by the Constitution and statutes of this State to the probate courts. Art. 7, § 34, Const. 1874. The words *"exclusive original"* jurisdiction used in the foregoing section of the Constitution have a significant meaning, differing in this respect from the language employed in any former Constitution. See art. 6, § 10, Const. 1836; art. 6, § 12, Const. 1861; art. 7, § 12, Const. 1864. The acts of April 16, 1873, conferred "such" jurisdiction in all matters of probate and administration upon the circuit court, but in 1874 the present Constitution was established, containing the above article and section conferring exclusive original jurisdiction upon the probate court. See to the same effect, Kirby's Digest, § 1340, enacted in 1875; 33 Ark. 728, 734. Chancery courts may act as a shield to protect the property of a minor from the effects of fraud, accident or mistake, and for the prevention of irremediable mischief, and has jurisdiction for that purpose, but should not exceed that necessity. *Myrick* v. *Jacks,* 33 Ark. 425, is not against appellant's contention, because a *fraud* had been committed upon a child by a probate court. See also 40 Ark. 393, 401; 48 Ark. 544; 100 S. W. 1052, 1070; 42 N. E. 8.

*Thomas & Lee,* for appellee.

The chancery court had the power to order the sale of the land in question, and its jurisdiction coexists with that of the probate court. The same jurisdiction may exist in more than one tribunal, to be exercised by the one first acquiring it. 45 Ark. 46, 48; 53 Ark. 43; 33 Ark. 425. "The court of probate shall have power to appoint guardians for minors, and possesses the control and superintendence of them." Kirby's Dig. § 3753. But "the jurisdiction of a court of chancery extends to the care of the person of an infant so far as necessary for his protection and

education," etc.  *  *  "and this jurisdiction is not taken away by the like power conferred by statute on the probate court." 38 Ark. 406. Where equity has original jurisdiction, it is not taken away by statute conferring jurisdiction in similar cases upon another court unless the statute expressly or by necessary implication excludes the equitable jurisdiction. The jurisdiction becomes concurrent or ancillary or auxiliary in the two courts. 55 Am. Dec. 74; 28 Ala. 629; 49 Ala. 99; 18 Ark. 583; 28 Ark. 19; 53 Ga. 36; 53 Ill. 214; 15 Mo. 662; 27 N. J. Eq. 408; 27 N. H. 513; 23 Miss. 236; 44 Miss. 805; 1 Phill. Eq. 69. That the chancery courts had jurisdiction over the persons and estates of minors under the Constitution of 1836 was never questioned; and "the Constitution of 1874 restored the probate system as it existed under the Constitution of 1836." 40 Ark. 434, 441; 33 Ark. 575; *Id.* 727; 34 Ark. 63; *Id.* 117; 36 Ark. 383. The act of April 22, 1873, conferring jurisdiction upon circuit courts (now chancery courts) has never been repealed, hence jurisdiction over a minor's business still remains in the chancery courts. Acts 1873, p. 120, § § 4, 33, 34. In this case the sale was not for the education and maintenance of the minor but for reinvestment in another home. The probate court has no jurisdiction to sell the homestead of a decedent during the minority of his children. 52 Ark. 213; 56 Ark. 563; 56 Ark. 574. Chancery jurisdiction, being auxiliary or ancillary and corrective, can be exercised where the relief afforded by the probate court is imperfect or inadequate, or where the proceedings have miscarried through fraud, accident or mistake. 23 Ark. 94; 16 S. W. 666; 48 Ark. 544; 34 Ark. 117; 45 Ark. 505; 27 Ark. 595; 26 Ark. 373; 49 Ark. 51; 16 Cyc. 96.

WOOD, J., (after stating the facts). The Constitutions of this State prior to the present one provide that the probate court shall "have such jurisdiction in matters relative to the estates of deceased persons as may be prescribed by law." Const. 1836, art. 6, § 10; Const. 1861, art. 6, § 12; Const. 1864, art. 7, § 12. See also Const. 1868, art. 7, § 5. As early as December 23, 1846, the Legislature gave to the probate court jurisdiction to order guardians "to sell lands belonging to any estate." Acts of December 23, 1846, p. 116; Gould's Digest, p. 134; *Reid* v. *Hart,* 45 Ark. 41. They continued to have such jurisdiction until the act of April 16, 1873, giving to the circuit court "exclusive original

jurisdiction of everything properly pertaining to matters cognizable in courts of probate, and all the powers and jurisdiction now possessed by courts of probate." At that time the jurisdiction of the probate court to sell the lands of wards was only concurrent with that of the equity court, which had always possessed such power in this State. *Shumard* v. *Phillips,* 53 Ark. 37, 44.

The act of April 16, 1873, *supra,* in express terms lodged all the jurisdiction that had been formerly possessed by courts of probate in the circuit courts, and gave to these courts, whether exercising their common law or equity powers, exclusive jurisdiction. The act of April 22, 1873, gave to guardians or curators power to sell the land of wards and to invest the proceeds in other land when it appeared to be for the benefit of the ward to do so. The sale could only be made, however, after obtaining an order from the circuit court. Acts of 1873, p. 194. Thus the law was written when the present Constitution was adopted, which provides: "The judge of the county court shall be the judge of the court of probate, and have such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind and their estates as is now vested in the circuit court or may be hereafter prescribed by law." Art. 7, § 34.

Now, when the Legislature of 1873 took away from the probate courts the jurisdiction to sell the lands of wards, and invested the circuit court with exclusive jurisdiction to order the sale of such lands, the intention was that only the circuit courts should possess such jurisdiction. Likewise, when the framers of the present Constitution divested the circuit courts of such exclusive jurisdiction and invested it in the probate courts, the intention was that the latter courts should possess that jurisdiction to the exclusion of all other courts. The word exclusive means: "possessed to the exclusion of others." Webster's Unabridged Dict.; Century Dict., "Exclusive."

To support their contention that chancery courts have jurisdiction under the Constitution of 1874 to sell a minor's land for reinvestment, appellee relies upon the decision of this court in *Myrick* v. *Jacks,* 33 Ark. 425, where we said: "The general jurisdiction over the persons and property of minors belonged to

the chancery courts. Courts of probate have by statute limited power over the estates of minors in the hands of administrators and guardians, but the statute is the limit of their power, and their orders, not authorized by the statute, are void. They have no authority to direct an investment of a minor's funds in land."

This language was used in passing upon an order of the probate court made in 1865 authorizing the guardian of a minor to invest the proceeds of the sale of her land in other lands. Myrick was seeking to hold Jacks liable for moneys or securities received from her guardian during her minority as a result of the order of the probate court. She set up in the complaint the facts, and alleged that there was collusion upon the part of Jacks with her guardian by which the court was misled into making the order, and that Jacks had thereby perpetrated a fraud upon her, etc. In 1865, while the probate courts had jurisdiction to order a guardian to sell the land of his ward (act of Dec. 23, 1846, *supra*), they had no authority to authorize the guardian to sell such land and to invest the proceeds in the purchase of other lands. Therefore the language of the court above quoted, while applicable to the jurisdiction of probate courts in 1865, was not applicable to the jurisdiction of such courts in 1878, when the opinion in *Myrick* v. *Jacks* was rendered. Nor is it applicable in the present case. For, as we have shown above, the act of April 22, 1873, gave to the circuit courts jurisdiction to order guardians to make sale of the lands of their wards and to invest the proceeds in other real estate, and the Constitution of 1874 vested exclusively in the probate courts the jurisdiction "in matters relative to the estates of deceased persons, guardians," etc., that theretofore had been vested in the circuit courts.

Counsel for appellee also quotes from the opinion in *Hall* v. *Brewer,* 40 Ark. 433, 434, as follows:

"At the time of the adoption of this Constitution (1874) the probate courts had been abolished, and their jurisdiction had been transferred to the circuit court. The constitutional convention intended to restore the probate system as it existed under the Constitution of 1836 and to revest in them the same jurisdiction in matters pertaining to the administration of the estates which had formerly belonged to them, but which since their abolition was exercised by the circuit courts."

The question in the case was whether or not a creditor of an estate whose claim had been duly probated, but not paid, could proceed in equity against the executors and devisees to subject the lands of the estate to the payment of his debt, after all the personal property had been administered and the administration practically closed, and the lands of the estate had been surrendered to the devisees. The complaint presenting this question was dismissed in the lower court, upon demurrer, on the ground that the court of probate had exclusive original jurisdiction. This court, speaking in regard to matters of administration, used the language above quoted, and concluded by saying that the matter under consideration "was not a detail of administration but a matter of trust." It was strictly accurate for this court to say that the Constitution of 1874 intended to revest in probate courts "the same jurisdiction in matters pertaining to the administration of estates that had formerly belonged to them," for in matters purely of the administration of estates courts of probate, except during the short period between the act of April 16, 1873, and the adoption of the Constitution of 1874, when their jurisdiction was transferred to the circuit courts, had exercised exclusive jurisdiction. *Moren* v. *McCown,* 23 Ark. 93; *West* v. *Waddill,* 33 Ark. 575; *Reinhardt* v. *Gartrell,* 33 Ark. 727; *Mock* v. *Pleasants,* 34 Ark. 63.

In *Reinhardt* v. *Gartrell,* 33 Ark. 727, this court, speaking of the constitutional provision under consideration, said:

"Obviously, it was meant to relegate to the probate courts their old jurisdiction without restriction or qualification. The decisions of this court regarding their former power apply now. Their jurisdiction has been simply elevated from a statutory to a constitutional basis, being as to limits unchanged." The court further said: "The courts of chancery have no power to take such cases out of the probate courts for the purpose of proceeding with the administration." · The language quoted had reference solely to the jurisdiction of the probate courts relative to matters of administration.

The question in the case was whether or not the settlements of an executor with the probate court could be reopened and he and his sureties made liable in equity for fraud in his settlements. The court held that, while for the purpose of proceeding with

the administration the probate court had exclusive jurisdiction, equity could intervene to correct and relieve against fraud.

The language of the court in the above cases to the effect that the Constitution of 1874 meant to restore to probate courts their old jurisdiction "as to limits unchanged" must be taken, of course, in connection with the question then at issue, the subject-matter under consideration. When so considered, it is clear that the court could have had no reference whatever to the jurisdiction of probate courts concerning the sale of real estate belonging to minors. It may be said, *en passant,* that the complaint in each of the cases above reviewed stated some special ground of equitable jurisdiction.

We do not find that this court has ever ruled upon the question as to whether the chancery court since the adoption of the Constitution of 1874 has concurrent jurisdiction with the probate court to order the sale of a minor's real estate for reinvestment. Judge COCKRILL in *Shumard* v. *Phillips, supra,* seems to have regarded it as an open question in this State at that time (1890), for he says: "What the effect of the grant of jurisdiction to the probate courts by that instrument (Const. 1874) is, it is not material now to consider." He would hardly have used this language had it been considered as settled by former decisions. We are therefore called upon for the first time to construe the provisions of art. 7, § 34, *supra,* of the Constitution with reference to the jurisdiction of the chancery court to order the sale of a minor's land for reinvestment, and our conclusion is that the chancery court has no such jurisdiction. The framers of the Constitution of 1874 were familiar with prior Constitutions and statutes. They knew that the act of April 22, 1873, had vested in the circuit courts jurisdiction to order guardians, under certain conditions, to sell the real estate of their wards, and to reinvest the proceeds in other real estate. Therefore when they vested this jurisdiction in the probate courts and made it *exclusive,* they meant what they said, and used the word "exclusive" advisedly. Their language was not to reinvest the probate courts with such jurisdiction as they had formerly exercised (which as to sale of lands was only concurrent), but to invest them with such exclusive original jurisdiction over the matters enumerated as was then vested in the circuit courts. The jurisdiction then vested

in the circuit courts was exclusive. The word "exclusive," as thus used, is too prominent to be ignored and too plain to be misunderstood.

But counsel for appellee contend that the Constitution did not vest jurisdiction "in a minor's business" in the probate courts, but left that in the circuit courts where it had been previously lodged by the act of April 16, 1873. A minor's business, unless his disabilities of nonage have been removed, can only be conducted through his guardian. The Constitution expressly vests "exclusive original jurisdiction in matters relative to the estates of deceased persons" and "guardians" in the probate courts. If a sale of the minor's land is contemplated, it must be done by the guardian after obtaining an order of the probate court. See act of April 22, 1873, *supra;* Kirby's Digest, § § 3801-3.

Counsel also contend that the chancery court had jurisdiction, if not concurrent, as "auxiliary or ancillary and corrective, and that it can be exercised where the relief afforded by the probate court is imperfect or inadequate, or where the proceedings have miscarried through fraud, accident or mistake"; and this is true. But no such grounds for the interposition of such equity jurisdiction are shown in this case. Where jurisdiction over a given subject-matter, the sale of lands for instance, is made exclusive in one court, no other court can exercise the same jurisdiction concurrently or in any other way. But it was not intended by the Constitution to take away from the chancery courts their ancient original jurisdiction over the persons and estates of minors, so far as such jurisdiction may be necessary for the protection of the infant or to protect his property from waste or spoliation through the carelessness, fraud, mistake, or imposition of his parents, guardians, or others. These are distinct grounds of equitable jurisdiction which have existed since the establishment of courts of chancery, and have been recognized in the jurisprudence of our English-speaking people for centuries. *State* v. *Grisby,* 38 Ark. 406, and authorities cited; *Myrick* v. *Jacks,* 33 Ark. 425.

But as is well expressed in a case similar to this: "Equity sits silent in the courts as long as the law is able to meet the demands of justice; it aids the law, but is not officious in its services." And again: "Equity distinguishes between the shield and

the sword. To protect the estate from a danger which the infant, because of his tender years, is unable to defend against is one thing; to commission some one to go into the field of trade, selling and buying on account of the infant, is another thing. Courts of equity have original jurisdiction over the estates of minors, but conceding that jurisdiction for certain equitable purposes does not concede jurisdiction to do any and everything whatsoever with the estate of a minor, *quia* minor. The act to be valid must be based on some equitable principle." *Heady* v. *Crouse,* 100 S. W. Rep. 1052; *Losey* v. *Stanley,* 42 N. E. Rep. 8.

The same principles that govern courts of chancery in interfering with the proceedings and adjudications of courts of probate in the administration of estates of deceased persons should control them in interfering with the administration of the estates of minors in the hands of their guardians, because the original jurisdiction of probate courts in each case is exclusive. Judge Eakin announced the rule for such interference as follows: "It may be safe, in general, to say that it should not exceed the necessity for the correction of fraud, accident and mistake, and for the prevention of irremediable mischief." *Reinhardt* v. *Gartrell, supra; Trimble* v. *James,* 40 Ark. 401; *Hankins* v. *Layne,* 48 Ark. 544; *McCracken* v. *McBee,* 96 Ark. 351.

The chancery court erred therefore in assuming jurisdiction to sell the land in controversy, and its judgment is reversed, and the cause is remanded with leave to take additional evidence on the accounting, if desired, and that accounting be had along the lines proposed in appellant's complaint, and after this that the sale be set aside, and appellant awarded possession, and for other proceedings not inconsistent with this opinion.